**F I L E D**

PUBLISH

**January 5, 2006**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOHNNY MARTON LOTT, also
known as Johnny Martin Lott,

Defendant-Appellant.

No. 04-6268

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 99-CR-30-T)**

---

Johnny Marton Lott, filed a brief *pro se.*

Howard A. Pincus, Assistant Federal Public Defender (Raymond P. Moore,
Federal Public Defender, with him on the briefs), Denver, Colorado, for Plaintiff-
Appellee.

Mark A. Yancey, Assistant United States Attorney (Robert G. McCampbell,
United States Attorney, Frank Michael Ringer, Assistant United States Attorney,
with him on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before **LUCERO**, **ANDERSON**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

## I. Introduction

Defendant-Appellant Johnny Lott was convicted in the United States District Court for the Western District of Oklahoma of offenses involving the manufacture and distribution of methamphetamine and sentenced to thirty years' imprisonment. Lott filed several motions to substitute counsel during the sentencing phase of his trial; the district court denied each such motion. On appeal, this court remanded so the district court could conduct an evidentiary hearing on Lott's allegations of a complete breakdown in communication. The district court held a hearing and again denied Lott's motion. Lott appealed. This court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1). Because any constitutional error in denying Lott counsel for the evidentiary hearing was harmless beyond a reasonable doubt, and the district court did not abuse its discretion in concluding there was not a complete breakdown in communication, we **affirm**.

## II. Background

Lott was convicted by a jury of various offenses in connection with a conspiracy to manufacture and distribute methamphetamine. After his conviction but prior to sentencing, Lott filed five *pro se* motions with the district court claiming he was dissatisfied with his trial counsel, Jack Pointer. The district

court denied each of these motions. Lott was sentenced to thirty years' imprisonment on June 9, 2000. Lott appealed, *inter alia*, the district court's denial of his motions to substitute counsel. On appeal, this court concluded the district court's denial, without a hearing, of Lott's motions to substitute counsel was an abuse of discretion. *United States v. Lott*, 310 F.3d 1231, 1250 (10th Cir. 2002) [hereinafter *Lott I*]. The case was remanded so the district court could conduct an evidentiary hearing on Lott's allegations of a complete breakdown in communication between him and Pointer. *Id*. This court limited the scope of the hearing to the sentencing stage and directed the district court to be guided by *Romero v. Furlong*, 215 F.3d 1107 (10th Cir. 2000). *Lott I*, 310 F.3d at 1250 & n.16.

On remand, the district court held an evidentiary hearing. Lott moved for the appointment of counsel to assist him at the hearing. The district court denied the motion. At the hearing, Lott testified regarding his complaints about Pointer's representation. Lott stated that Pointer did not provide him with any discovery and never visited him in jail. In response to questions by the government, however, Lott admitted he had met with Pointer and his probation officer to prepare the Presentence Investigation Report ("PSR"). In addition, Lott and Pointer corresponded through letters and talked on the telephone. The government called Pointer to testify at the hearing. Pointer testified to two

personal meetings with Lott and several letters and telephone calls following his conviction. Pointer also stated that Lott refused to assist him with his defense and instead claimed he had been set up and the witnesses were all lying. After the hearing, the district court determined Lott had failed to show "good cause" in support of his request for substitution of counsel.

## III. Discussion

### A. Right to Counsel

Lott first argues he was entitled under the Sixth Amendment to have counsel represent him at the evidentiary hearing. Lott concedes that, typically, a district court conducting an evidentiary hearing on a motion to substitute counsel will not have to appoint new counsel to represent the defendant during the hearing. Lott argues, however, that because the hearing in this case was conducted in an adversarial manner, instead of an inquisitorial one, he is entitled to counsel. In determining if a defendant has a Sixth Amendment right to counsel, we review any underlying factual determinations for clear error and the legal questions *de novo*. *United States v. Washington*, 11 F.3d 1510, 1517 (10th Cir. 1993).

When a defendant files a motion for new counsel, "the district court should make formal inquiry into the defendant's reasons for dissatisfaction with present counsel." *United States v. Padilla*, 819 F.2d 952, 956 n.1 (10th Cir. 1987). This

inquiry usually takes an inquisitorial form, with the judge questioning both defendant and counsel. *See, e.g.*, *United States v. Doe*, 272 F.3d 116, 123–24 (2d Cir. 2001). The hearing in this case, however, did not proceed merely as a colloquy between the court, Lott, and Pointer. Although the district court questioned both Lott and Pointer, it also permitted the government to cross-examine Lott, question Pointer, and present documentary evidence. Moreover, because Lott had already been sentenced, his motion for substitute counsel effectively sought a new sentencing hearing, and the government had an interest in advocating for the denial of Lott's motion. Thus, the hearing was adversarial. We need not decide, however, whether the unique posture of this case and the adversarial nature of the evidentiary hearing transformed it into a "'critical' stage[] of the proceeding" such that the Sixth Amendment right to counsel is implicated. *United States v. Wade*, 388 U.S. 218, 224 (1967). Rather, any constitutional error was harmless beyond a reasonable doubt because the presence of counsel for Lott at the evidentiary hearing would not have affected the district court's decision. *See Milton v. Wainwright*, 407 U.S. 371, 372 (1972) (concluding that any error in admitting confession was harmless without reaching merits of constitutional claim).

The Supreme Court recognized in *Chapman v. California* that there are "some constitutional errors which in the setting of a particular case . . . may . . .

be deemed harmless." 386 U.S. 18, 22 (1967).[1]  Since *Chapman*, the Court has "applied harmless-error analysis to a wide range of errors and has recognized that most constitutional errors can be harmless."  *Arizona v. Fulminante*, 499 U.S. 279, 306, 307 (1991) (listing constitutional violations analyzed for harmless error).  Some constitutional violations, however, are not subject to harmless error review, and instead, require automatic reversal.  These violations, termed "structural errors," involve defects in the "trial mechanism" and affect "the framework within which the trial proceeds" "from beginning to end."  *Id*. at 309–10.  Only a limited class of constitutional violations have been held to constitute structural error.  *See Sullivan v. Louisiana*, 508 U.S. 275, 280–82 (1993) (jury instruction that contained "a misdirection on the burden of proof")*;*

---

[1]In the context of a Sixth Amendment claim for ineffective assistance of counsel, courts apply the standard enunciated in *Strickland v. Washington*.  466 U.S. 668 (1984).  To prevail on a claim under *Strickland*, the defendant bears the burden of proving counsel's performance was both deficient and prejudicial.  *Id*. at 687.  In cases of actual or constructive denial of the assistance of counsel altogether, however, prejudice is presumed.  *Id*. at 692.  The *Strickland* standard, which places a more onerous burden on the defendant, does not apply in this case for reasons similar to those discussed in *United States v. Lott* for applying the *Chapman* standard to claims of a breakdown in communication.  310 F.3d 1231, 1251–52 (10th Cir. 2002) ((1) *Strickland* standard requires review of trial as a whole for fundamental unfairness, but right to counsel can be violated at any critical stage of the proceeding; and (2) ineffectiveness claims must almost always be brought on collateral attack, but right to counsel can be brought on direct appeal).

*Fulminante*, 499 U.S. at 306–07 (collecting cases); *Penson v. Ohio*, 488 U.S. 75, 88–89 (1988) (complete denial of counsel on appeal).

Some Sixth Amendment right to counsel violations are amenable to harmless error analysis, while others are not. In *Satterwhite v. Texas*, the Supreme Court explained that Sixth Amendment structural error exists when "the deprivation of the right to counsel affect[s]–and contaminate[s]–the entire criminal proceeding." 486 U.S. 249, 257 (1988); *see also Penson*, 488 U.S. at 88–89 (complete denial of counsel on appeal); *Holloway v. Arkansas*, 435 U.S. 475, 490–91 (1978) (conflict of interest in representation throughout entire proceeding); *White v. Maryland*, 373 U.S. 59, 60 (1963) (absence of counsel from preliminary hearing where guilty plea was later admitted at trial); *Gideon v. Wainwright*, 372 U.S. 335, 345 (1963) (total deprivation of counsel throughout entire proceeding); *Hamilton v. Alabama*, 368 U.S. 52, 55 (1961) (absence of counsel from arraignment where defenses not asserted were irretrievably lost). Sixth Amendment violations that do not pervade the entire proceeding, on the other hand, are subject to harmless error review. *See Coleman v. Alabama*, 399 U.S. 1, 9–10 (1999) (absence of counsel at preliminary hearing but prosecution prohibited from using anything that occurred at the hearing at trial); *Satterwhite*, 486 U.S. at 258 (admission of psychiatric testimony at capital sentencing obtained in violation of Sixth Amendment); *Moore v. Illinois*, 434 U.S. 220, 232 (1977)

(admission of pretrial, corporeal identification made without counsel present); *Milton*, 407 U.S. at 377–78 (admission of confession obtained without counsel).

In *Coleman*, for example, the Court held a preliminary hearing in Alabama state court is a "critical stage" for Sixth Amendment purposes, entitling the defendant to representation by counsel. 399 U.S. at 9–10 (1999). The Court nevertheless concluded that the denial of counsel at a preliminary hearing was subject to harmless error review. *Id*. at 10–11. *Coleman* is consistent with the Court's precedent regarding the application of harmless error analysis because the right to counsel in *Coleman* was only denied for the preliminary hearing, not the entire trial. Moreover, in Alabama, a defendant's failure to raise a defense at a preliminary hearing does not foreclose later reliance on that defense, and testimony given at the preliminary hearing is not admissible at trial unless the defendant was represented by counsel. *Id*. at 8. Thus, unlike cases where the Court has found Sixth Amendment structural error, the denial of counsel at the preliminary hearing did not affect or contaminate the entire criminal proceeding. *See White*, 373 U.S. at 60 (structural error existed where guilty plea entered at preliminary hearing without counsel was admitted against defendant at trial).

The preliminary hearing at issue in *Coleman* bears some similarities to the evidentiary hearing at issue here. The evidentiary hearing on remand at which Lott was denied counsel was only a portion of the entire criminal proceeding.

Lott was represented by counsel throughout his trial and sentencing as well as during both of his appeals to this court. Additionally, the denial of counsel at the evidentiary hearing did not result in the loss of any identified right. In *Hamilton*, the absence of counsel from arraignment was deemed structural error because defenses not raised in the proceeding were irretrievably lost. 368 U.S. at 53–55. By contrast, in *Coleman*, although the preliminary hearing was a critical stage, the absence of counsel was reviewable for harmless error, in part, because the defendant did not lose defenses for failure to assert them or have testimony at the hearing used to determine his guilt at trial. As in *Coleman*, nothing that occurred at Lott's evidentiary hearing contaminated Lott's entire criminal proceeding. Lott has not identified any rights that he lost for failure to raise them at the hearing. Because Lott was denied counsel only during the hearing in question, and the absence of counsel at that hearing did not constitute a total deprivation of counsel or result in the loss of any rights, any Sixth Amendment violation was not structural error. Thus, assuming there was Sixth Amendment error, our review is for harmlessness.

Under harmless error review, the government has the burden of proving beyond a reasonable doubt that the constitutional violation did not contribute to the judgment. *Chapman*, 386 U.S. at 24. Because we conclude, beyond a reasonable doubt, that the district court would have come to the same conclusion

regarding whether there was a complete breakdown in communication even if Lott was represented by counsel at the hearing, the error, if any, was harmless.

Although Lott was not represented by counsel and the hearing became adversarial, the district court conducted the hearing in such a way that all relevant evidence was brought to light. Lott had ample opportunity to explain his reasons for requesting new counsel. Additionally, the district court questioned Pointer to clarify his testimony and allowed Lott to interject his version of events into Pointer's testimony.

Lott contends his inability to read and write prevented him from understanding the evidentiary hearing. The record, however, demonstrates otherwise. The district court explained the purpose and procedure of the hearing to Lott.[2] During Pointer's testimony, Lott made objections on grounds of hearsay and speculation. In one objection, Lott demonstrated his comprehensive understanding of the government's documentary evidence by stating, "I object,

---

[2] The district court informed Lott as follows:

"[T]his whole hearing is an opportunity for you to just tell me, in your own way, in your own words, why you believe that there was that kind of a—of a communications breakdown. . . . I want you to have the opportunity to tell me everything, everything that you base your belief on that there was this complete breakdown of communications between you and Mr. Pointer during that period of time."

Your Honor, because it says June the 19th, and on his time card it says 5-15-2000, and there's not no one on June 19th of any call, Government's Exhibit 1.1 and Government's 3.4. It's total different numbers there, Your Honor."

More importantly, the district court's conclusion that there was not a complete breakdown in communication is supported by Lott's testimony and would not have been affected by any additional evidence Lott could have presented. At the evidentiary hearing, Lott admitted to one in-person meeting, "a letter or two," and one telephone call with Pointer during the sentencing phase. Lott admitted to meeting with Pointer and the probation officer in person to prepare the PSR, and acknowledged receiving a copy of the report from Pointer while in jail. Lott also acknowledged speaking to Pointer on the telephone at least one time and knowing of Pointer's policy that clients could call him collect from jail at any time. These contacts, which Lott admitted to, are alone sufficient to support the district court's determination that there was not a complete breakdown in communication. *See United States v. Porter*, 405 F.3d 1136, 1141 (10th Cir. 2005) (no breakdown in communication when attorney spent one and one-half hours reviewing presentence report with defendant before sentencing hearing began).

Lott contends he would have benefitted from the assistance of counsel at the hearing because he could have presented jail records showing Pointer failed to

-11-

visit him at the jail and his mother's testimony that she could not reach Pointer on the telephone. The district court, however, was aware of these arguments. Although Lott admitted to one, in-person visit at the courthouse with Pointer and the probation officer to prepare the PSR, Lott argued that Pointer had never visited him at the jail. Lott explained to the district court that it could "check the records at [the jail]" to see that Pointer had never visited him there. The government, however, did not dispute this point and, thus, the district court considered the lack of jail visits in reaching its decision. Additionally, Lott informed the court that his mother attempted to contact Pointer but that her calls were not returned. The district court was also aware that Lott's mother, who could offer testimony of her efforts to contact Pointer, was in the courtroom. Nevertheless, this evidence would not have affected the district court's judgment. Generally, an attorney is not required to answer telephone calls from his client's mother to effectively communicate with his client. Because any evidence counsel for Lott could have presented at the hearing would not have affected the district court's judgment in light of the contacts Lott admitted, the absence of counsel was harmless beyond a reasonable doubt.

**B. Substitution of Counsel**

Lott also challenges the district court's conclusion that no complete breakdown in communication occurred between Lott and Pointer. In determining

whether there was a complete breakdown in communication, this court directed the district court to be guided by the four factors in *Romero*: (1) whether the motion for new counsel was timely; (2) whether the trial court adequately inquired into the reasons for making the motion; (3) whether the defendant-attorney conflict was so great that it led to a total lack of communication precluding an adequate defense; and (4) whether the defendant substantially and unreasonably contributed to the communication breakdown. 215 F.3d at 1113. We review the district court's refusal to substitute counsel for an abuse of discretion. *United States v. Beers*, 189 F.3d 1297, 1302 (10th Cir. 1999).

The district court determined Lott's motion to substitute counsel was timely. This determination is supported by the record because Lott's motion was filed three months prior to sentencing. Therefore, the first *Romero* factor weighs in favor of granting Lott's motion for substitute counsel. The remaining three factors, however, weigh against Lott.

The trial court adequately inquired into Lott's reasons for requesting substitute counsel. The district court conducted an evidentiary hearing and heard testimony from both Lott and Pointer. Although the hearing became adversarial, the district court gave Lott ample opportunity to voice his concerns and guided the hearing to ensure that all evidence was presented.

Likewise, the district court did not abuse its discretion in concluding any conflict between Lott and Pointer was not so great as to result in a total lack of communication precluding an adequate defense. The district court found, and the record demonstrates, in-person meetings, letters, and telephone calls between Lott and Pointer during the sentencing phase. Lott met with Pointer and his probation officer to prepare the PSR. Pointer sent Lott letters, including one attaching a copy of the PSR and asking for comments or corrections. Lott made at least one telephone call to Pointer and knew of Pointer's policy that clients could call him collect from jail at any time. Pointer met with Lott in person again in the holding area before sentencing. These contacts are sufficient to support the district court's determination that there was not a lack of communication precluding an adequate defense. *See Porter*, 405 F.3d at 1141.

Lott contends the substance of the communications shows a lack of effective communication. Specifically, Lott points to a letter to Pointer which another inmate wrote for him,[3] and Lott's refusal to respond with comments or corrections to the PSR. The letter, however, does not demonstrate a lack of communication; rather, it demonstrates a mere disagreement in strategy between

---

[3] In the letter, Lott stated, "It is only reasonable for me to expect to be allowed input and some say concerning my own defense in these serious charges." The letter further states, "Your decision to wing it at trial without even discussing the case with me was wrong by anyone's standards."

-14-

Lott and Pointer. Lott claimed all the witnesses were lying and he was being set up. Instead of relying on Lott's views, Pointer chose to review trial testimony and discovery in constructing a strategy for Lott's sentencing. This strategic disagreement is not sufficient to show a complete breakdown in communication. *Lott I*, 310 F.3d at 1249 (internal citations omitted).

Lott also argues the district court erred in considering communications that occurred after Lott's last motion to substitute counsel in March 2000. Because, according to Lott, the district court should have held an evidentiary hearing immediately after this motion, in which only communications between the time of conviction and March 2000 could have been considered, the district court should have only considered communications from that time period. Lott, however, was not sentenced until June 9, 2000. Thus, in determining whether a complete breakdown in communication occurred during the sentencing phase, the district court did not abuse its discretion by considering relevant communications that occurred after Lott's motion to substitute counsel, but before sentencing.

Finally, the district court determined Lott contributed, although only slightly, to any communication breakdown because of a February 16, 2000 letter from Lott refusing to allow Pointer to represent him. The record supports this conclusion. In addition to the February 16, 2000 letter, Lott failed to make comments or corrections to the PSR Pointer sent to him. He also declined to

review discovery materials Pointer offered to send or read to him. Instead, Lott merely repeated his view that he had been set up and all the evidence against him was a lie. Thus, the district court did not abuse its discretion in concluding Lott contributed, even if only slightly, to any communication breakdown.

Although Lott's motion for substitute counsel was timely filed, the district court did not abuse its discretion in concluding the other three *Romero* factors weighed against finding a complete breakdown in communication. Thus, we affirm the district court's denial of substitute counsel.

### C. *Booker* Error

In his supplemental opening brief, Lott challenges his sentence on the grounds of constitutional and non-constitutional *Booker* error. The Supreme Court's constitutional and remedial holdings in *Booker* apply "to all cases on direct review." *United States v. Booker*, 125 S. Ct. 738, 769 (2005). Because Lott's present appeal is from a remand by this court on Lott's first appeal, the case is still on direct review and *Booker* is applicable.

Lott concedes in his reply brief that his sentence should be reviewed for plain error and that he cannot satisfy the test for plain error review of *Booker* claims established by this court's recent decisions. *United States v. Dazey*, 403 F.3d 1147, 1175–76 (10th Cir. 2005) (difference between Guidelines sentence imposed and sentence defendant would have received based on prior conviction,

facts found by jury, or facts admitted by defendant not sufficient to satisfy substantial rights prong of plain error); *Gonzalez-Huerta*, 403 F.3d 727, 732–39 (10th Cir. 2005) (non-constitutional *Booker* error is not structural error; court will not presume prejudice for non-constitutional *Booker* error; blanket statement that upholding sentence imposed under mandatory Guidelines places fairness, integrity, or public reputation of judicial proceedings in jeopardy not sufficient to establish fourth prong of plain error). Nevertheless, Lott wishes to preserve the issue for appeal to the Supreme Court, and he has done so.

## IV. Conclusion

For the foregoing reasons, this court **AFFIRMS** the district court's denial of Lott's motion for substitution of counsel.