FILED
United States Court of Appeals
Tenth Circuit

February 17, 2010

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

NATHANIEL SOLON,

      Defendant - Appellant.

No. 09-8018

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D. Ct. No. 2:07-CR-00032-CAB-1)**

---

Megan L. Hayes, Laramie, Wyoming, appearing for Appellant.

James C. Anderson, Assistant United States Attorney (Kelly H. Rankin, United States Attorney, with him on the brief), Office of the United States Attorney for the District of Wyoming, Cheyenne, Wyoming, appearing for Appellee.

---

Before **TACHA**, **SEYMOUR**, and **LUCERO**, Circuit Judges.

---

**TACHA**, Circuit Judge.

Defendant-appellant Nathaniel Solon was convicted of possession and attempted receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(1), (a)(5)(B), and (b)(2). He was sentenced to concurrent terms of 72 months'

imprisonment. In this appeal, Mr. Solon argues that: (1) the government denied him the right to present a complete defense; (2) a six-minute absence by the trial judge constituted structural error; and (3) he was denied his right to a speedy trial. We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

## I. BACKGROUND

On January 18, 2007, Mr. Solon was charged by indictment with possession of child pornography. He entered a plea of guilty to that charge on October 2, 2007. During his sentencing hearing on January 3, 2008, Mr. Solon stated that he was innocent and the only reason he had pleaded guilty was because he did not have the financial resources to hire an expert witness to investigate his defense. The district court continued the proceeding, appointed Mr. Solon's private attorney to represent him, and indicated that it would provide funding for an expert witness to help Mr. Solon prepare a defense.

Mr. Solon requested the court's approval to retain Tami Loehrs, an out-of-state expert with experience in computer forensic analysis. The district court approved Ms. Loehrs as an expert witness, and authorized payment for "a total billing not to exceed $20,000 unless further ordered by the Court." Subsequently, Mr. Solon filed a motion requesting payment of Ms. Loehrs's initial bill of $10,603.90, which covered travel, lodging, and compensation for three days of work. Although the court noted that the bill seemed "unusually high," it paid the initial request. Because of the court's concern over Ms. Loehrs' fees, however, it

withdrew its prior authorization of a $20,000 maximum for her services and ordered that all future requests should be supported by specific cost estimates and evidence of the need for and reasonableness of such services prior to incurring additional costs.

At a hearing on April 16, 2008, Mr. Solon cited Ms. Loehrs's preliminary expert report as grounds for withdrawing his guilty plea. In her report, Ms. Loehrs opined that there was no evidence that the images of child pornography on Mr. Solon's computer were ever opened, viewed, or saved to another location. Furthermore, she believed that a virus may have compromised the system and allowed access to the computer by outside sources, although she had not yet determined to what extent, if any, that had actually occurred.

While the court considered Mr. Solon's motion to withdraw his guilty plea, he filed a motion to dismiss for violation of the Speedy Trial Act. The court allowed Mr. Solon to withdraw his guilty plea but denied his motion to dismiss. The court also agreed to pay for Ms. Loehrs to testify at the trial and for four hours of pretrial consultation.

Mr. Solon's trial commenced on November 3, 2008. During defense counsel's closing argument, the judge excused himself from the bench, instructing the attorneys to "go right ahead." Defense counsel did not object, but decided to wait for the judge's return before completing his closing argument. The judge returned just under six minutes later, apologized for his absence, and explained

that it was his secretary's afternoon to play canasta and he had to get a couple of letters out. The jury convicted Mr. Solon later that day, and the court sentenced him to 72 months' imprisonment.

Mr. Solon filed a motion for a new trial, asserting that the judge's absence constituted structural error because the jury may have inferred from his conduct that Mr. Solon's argument was not worth listening to. The trial court denied the motion, concluding that if there was any error it was harmless. This timely appeal followed.

## II. DISCUSSION

### A.    Complete Defense

Mr. Solon first alleges the district court infringed on his Fifth Amendment right to present a complete defense and his rights under the Criminal Justice Act ("CJA") when it modified its prior approval of funding for his expert witness. He argues that the court's order effectively halted the expert's work and struck her funding, thereby impeding his ability to develop and put on a complete defense. The government contends that it was permissible for the district court to require Mr. Solon to provide documentation prior to obtaining additional funding and that the district court did not violate Mr. Solon's rights because it never denied a request for funding.

#### 1.    *Criminal Justice Act*

The CJA authorizes district courts to pay for indigent defendants' counsel

and "investigative, expert, and other services necessary for adequate representation." 18 U.S.C. § 3006A(e)(1). "In order to obtain services under this provision, the defendant must do more than allege that the services would be helpful." *United States v. Kennedy*, 64 F.3d 1465, 1470 (10th Cir. 1995). Rather, as the statute clearly states, the defendant must convince the court that the expert's services are "necessary to an adequate defense." *United States v. Greschner*, 802 F.2d 373, 376 (10th Cir. 1986). Under the CJA, if the cost of an expert exceeds $1,600, not taking into account actual expenses, it will not be paid unless "certified by the court . . . as necessary to provide fair compensation for services of an unusual character or duration . . . ." 18 U.S.C. § 3006A(e)(3). "Appointing an expert is within the discretion of the [c]ourt," *United States v. Ready*, 574 F.2d 1009, 1015 (10th Cir. 1978); therefore, we review the denial of a CJA funding request for an abuse of discretion. *Kennedy*, 64 F.3d at 1470.

Here, the district court did not abuse its discretion, because, as the government points out, the district court never actually denied a funding request. Indeed, the district court granted the only funding request Mr. Solon made. Therefore, Mr. Solon's argument necessarily fails. Furthermore, § 3006A(e)(3) expressly provides a district court with the discretion to determine whether high costs are "fair compensation for services of unusual character or duration." In this case, the defense expert, Ms. Loehrs, submitted a bill of more than $10,000 for three days of work. The district court, understandably concerned by the high

costs, altered its earlier approval of expenses and required Ms. Loehrs to provide the court with an "affidavit itemizing expenses incurred on behalf of [Mr. Solon] prior to . . . preauthorization of expert expenses." This change was intended to provide the court with a chance to "scrutinize and approve reasonable expenses incurred," and is consistent with the district court's discretion to approve expert fees under § 3006A(e)(3).

Because the district court never denied a funding request and because the court's requirement of an affidavit from Mr. Solon and his expert finds implicit support in § 3006A(e)(3), we hold that the district court did not abuse its discretion with respect to its provision of defense expert fees under the CJA.

2.     *Fifth Amendment Right to Due Process*

"The Fifth Amendment's guarantee of fundamental fairness entitles indigent defendants to a fair opportunity to present their defense at trial." *Kennedy*, 64 F.3d at 1473. "An indigent defendant is not entitled to all the assistance that a wealthier counterpart might buy, but rather only the basic and integral tools." *Id.* We determine what services constitute "basic tools" by considering three factors: (1) the effect on the defendant's interest in the accuracy of trial if the requested service is not provided; (2) the burden on the government's interest if the service is provided; and (3) the probable value of the additional service and the risk of error in the proceeding if the service is not offered. *Id.* Importantly, these factors are all based upon a request by the

-6-

defendant for additional services.

The fact that Mr. Solon failed to request additional funding is again dispositive. The district court granted all of Mr. Solon's requests for expert witness funding and provided him with the means to request further funding. Regardless of whether he believed the court was inclined to provide such funding, Mr. Solon's failure to make such requests negates any alleged constitutional violation by the court.

B.      Structural Error

Mr. Solon also argues that the district judge's brief absence from the bench during defense counsel's closing argument constitutes structural error requiring automatic reversal. The government concedes that it was error for the judge to leave the bench, but maintains that it is trial error and thus subject to harmless-error review.

Although most constitutional errors can be harmless, some are so offensive to our judicial system that they require automatic reversal. *Arizona v. Fulminante*, 499 U.S. 279, 306–09 (1991). "These violations, termed 'structural errors,' involve defects in the 'trial mechanism' and affect 'the framework within which the trial proceeds' 'from beginning to end.'" *United States v. Lott*, 433 F.3d 718, 722 (10th Cir. 2006) (quoting *Fulminante*, 499 U.S. at 309–10)). "Structural errors deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of

guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.'" *United States v. Gonzalez-Huerta*, 403 F.3d 727, 733 (10th Cir. 2005) (quoting *Rose v. Clark*, 478 U.S. 570, 577–78 (1986)). "[A] defining feature of structural error is that the resulting unfairness or prejudice is necessarily unquantifiable and indeterminate, such that any inquiry into its effect on the outcome of the case would be purely speculative." *Id.* (internal quotations omitted). On the other hand, trial errors which are not deemed structural remain subject to harmless error review. *See Fulminante*, 499 U.S. at 306–07.

The Supreme Court has only deemed errors structural in a "very limited class of cases." *Johnson v. United States*, 520 U.S. 461, 468–69 (1997). These include: a total deprivation of the right to counsel; the lack of an impartial trial judge; the unlawful exclusion of grand jurors of defendant's race; a deprivation of the right to self-representation at trial; the denial of the right to a public trial; and an erroneous reasonable-doubt jury instruction. *See id.* (citations omitted). Neither the Supreme Court nor this circuit has ever decided whether a judge's absence from the bench constitutes structural error. The Third, Fourth, Fifth, and Ninth Circuits, however, have considered the issue but have reached differing conclusions.

In support of his position, Mr. Solon cites *United States v. Mortimer*, 161 F.3d 240 (3d Cir. 1998) and *Riley v. Deeds*, 56 F.3d 1117 (9th Cir. 1995). In *Mortimer*, the judge disappeared from the bench during defense counsel's closing

-8-

argument. 161 F.3d at 241. The judge did not announce his departure and nobody noticed his absence until the prosecutor made an objection. *Id.* The judge gave no reason for his disappearance and was back on the bench "in time to thank defense counsel for her speech and call the prosecutor for her rebuttal." *Id.*

The Third Circuit noted the importance of a judge's presence during trial and held that "[o]n the facts of this case . . . structural error occurred." *Id.*

Similarly, in *Riley* the judge disappeared during jury deliberations. 56 F.3d at 1118. When the jury asked the court to read back part of the trial testimony, the judge could not be located. *Id.* In the judge's absence, his law clerk granted and presided over the readback proceeding. *Id.* The Ninth Circuit held that "the state trial judge's failure to rule on whether the victim's direct examination should have been read back, coupled with his absence and unavailability during the readback proceeding, resulted in structural error . . . ." *Id.*

In contrast, the government cites *Heflin v. United States*, 125 F.2d 700 (5th Cir. 1942) and *United States v. Love*, 134 F.3d 595 (4th Cir. 1998) for the position that the absence of a judge from the bench is not necessarily structural error. In *Heflin*, the Fifth Circuit held that the absence of a trial judge "for two or three minutes" during the defendant's closing argument did not result in prejudice. 125 F.2d at 701. Although the judge did not announce his departure, there were no objections or motions made during his absence, and thus no prejudice to the defendant. *Id.*

Likewise, in *Love* the Fourth Circuit held that a district judge's absence during portions of closing arguments was harmless error. 134 F.3d at 604–05. The judge told both parties that he would "on occasion be in his chambers, working on other matters," but he would be available to rule on objections should any be made. *Id.* at 604. Neither party objected to the judge's absence and the defendant could not point to any "specific comments made in the district judge's absence that affected the trial's fairness." *Id.* Nevertheless, the defendant alleged that the absence itself gave the jury the impression that the judge had made up his mind. *Id.* at 605. The Fourth Circuit refused to consider the absence structural error noting that unlike in *Riley*, there was no "complete abdication of judicial control over the process." *Id.* It further concluded that the error was harmless because the judge was absent "during both sides' closing arguments" and "explained to the jury why he would leave the courtroom." *Id.*

Here, the district judge left the bench for just under six minutes in the middle of defense counsel's closing argument and his clerk informed the parties that he was still available to rule on objections. Although the record conveys the parties' confusion, at no point did Mr. Solon object to the judge's absence. Furthermore, counsel were aware that the judge was leaving the bench, and despite his instruction to "go right ahead" nothing occurred during his absence. Finally, upon his return to the bench, the judge explained his brief absence to the court. Therefore, unlike in *Mortimer* and *Riley*, the judge in this case was

available if needed and there were no objections to rule on or decisions for him to make while he was away from the bench.  Based on the record and the above-cited case law, we cannot conclude that the judge's absence in this case affected the framework within which the trial proceeded from beginning to end.  Under these circumstances the absence of the judge did not constitute structural error.[1]

Accordingly, this trial error is subject to harmless error review.  Generally, "[t]he government bears the burden of proving the error is harmless beyond a reasonable doubt."  *United States v. Rogers*, 556 F.3d 1130, 1141 (10th Cir. 2009).  When the defendant fails to timely object to an alleged error, however, we review only for plain error and "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice."  *United States v. Olano*, 507 U.S. 725, 734 (1993).  Mr. Solon failed to object to the district judge's absence, therefore, he must show that "there is (1) error (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Gonzalez-Huerta*, 403 F.3d at 732.

The government has conceded and we strongly agree that the judge's departure from the bench was error.  Furthermore, we hold that such error was

---

[1]We do not decide today whether a judge's absence from the bench might constitute structural error in a case where the facts indicate a "complete abdication of judicial control over the process."  *See Riley*, 56 F.3d at 1118.  We only decide that based on the facts of this case, the judge's absence did not rise to the level of structural error.

also clear and obvious. Nevertheless, Mr. Solon has not satisfied the third prong of plain-error review. In order to do so, he "must show a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Id.* at 733.

Mr. Solon contends that the "context and timing of the judge's departure from the courtroom" resulted in sufficient prejudice to call into question the result of the proceeding. He argues that when combined with prior comments made about Ms. Loehrs, the judge's departure from the bench "reflected on the credibility of the entire defense case." The record does not support Mr. Solon's position. Although the judge made several disparaging comments about Ms. Loehrs and her rates, only one such comment was made in front of the jury. When Ms. Loehrs testified that her work had been "stopped," the judge gave the following instruction:

> Members of the jury, the witness just said that she was stopped and coupled with her testimony yesterday there is the implication that the court stopped her from working. That is absolutely untrue. It is a falsity, and you are instructed to ignore it. And we will hear no more such testimony. I never did stop this witness from working. I did stop her from submitting excessive bills to the United States, and that's all I ever did.

The dissent recites other statements by the judge; however, because those statements were made outside the presence of the jury, they could not have affected the jury's perception of Ms. Loehrs or her testimony and therefore have no bearing on our analysis. Additionally, although the judge left the bench during

-12-

defense counsel's closing argument, it was during a point at which counsel was comparing the testimony of defense and prosecution witnesses in general, not just Ms. Loehrs's. Defense counsel had already mentioned Ms. Loehrs's testimony several times during his argument and went on to address her testimony in further detail after the judge's return. Even in light of the judge's prior statement, we cannot agree with Mr. Solon that the district judge's absence could only be interpreted as discrediting Ms. Loehrs's testimony or Mr. Solon's defense.

Additionally, the government's case was strong. Mr. Solon's computer was observed online offering child pornography for download on June 23 and August 9, 10, and 11, 2006. A search of Mr. Solon's computer's hard drive revealed that on September 20, 2006, forty-six files with names consistent with child pornography were downloaded using Limewire, a peer-to-peer file sharing program. Furthermore, Mr. Solon admitted to using Limewire on September 20 to attempt to download two computer games. Additionally, the government presented evidence that Mr. Solon was playing online poker on his computer less than five minutes before the child pornography files were downloaded. In light of the brevity of the judge's absence as well as the strength of the government's case, Mr. Solon has not established a reasonable probability that, but for the judge's absence, the jury would not have convicted him.

Because Mr. Solon has failed to satisfy plain-error review, he is not entitled to relief on this claim. Nevertheless, we note that it is serious error for a judge to

leave the bench without safeguards. Ordinarily, when a judge needs to leave the bench, the court should take a recess. If for some reason the court does not take a recess, the judge should, at a minimum, provide notice to counsel and an admonition to the members of the jury concerning the nature of his absence and the fact that they should make no inference from his departure. These safeguards help to prevent prejudice to either party and to maintain the integrity of the judicial system.

### C. Speedy Trial Act

Finally, Mr. Solon claims he was denied his statutory right to a speedy trial under 18 U.S.C. § 3161. Specifically, he argues that the speedy trial clock began running thirty days after the district court took his motion to withdraw his guilty plea under advisement. The government argues that pursuant to § 3161(i), the clock did not begin to run until Mr. Solon's motion was granted. We review the district court's compliance with the Act de novo. *United States v. Dirden*, 38 F.3d 1131, 1135 (10th Cir. 1994).

"The Speedy Trial Act is designed to protect a criminal defendant's constitutional right to a speedy trial and serve the public interest in bringing prompt criminal proceedings." *United States v. Thompson*, 524 F.3d 1126, 1131 (10th Cir. 2008). It generally requires that the trial of a defendant commence within seventy days from the later of the filing date of the information or indictment or the defendant's initial appearance. 18 U.S.C. § 3161(c)(1). That

time period only applies, however, "[i]n any case in which a plea of not guilty is entered." *Id.* When, as in this case, a plea of guilty is entered but later withdrawn, "the defendant shall be deemed indicted . . . on the day the order permitting withdrawal of the plea becomes final," thereby starting the seventy-day clock. *Id.* § 3161(i).

Accordingly, under the plain language of the Act, the speedy trial clock began running on September 17, 2008, the date on which the district court granted Mr. Solon's motion. Trial commenced on November 3, 2008, well within the seventy-day time limit. Therefore, the district court properly denied Mr. Solon's motion to dismiss based a violation of the Act.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Mr. Solon's conviction.

09-8018, <u>United States v. Solon</u>

**LUCERO**, J., concurring in part and dissenting in part).


Were this case simply about an innocent game of canasta, I would readily join the opinion of my majority colleagues outright. However, the abrupt departure of the trial judge from the bench while defense counsel was discussing the testimony of defendant's star witness, when coupled with the court's earlier admonitions to the jury that the same witness's testimony was "absolutely untrue" and a "falsity," can only be interpreted as a clear message to the jury that the witness was not credible or worthy of the court and jury's unbiased consideration. Although I agree with the majority's disposition of Solon's speedy trial and complete defense claims, I would hold that the judge's actions were a clear violation of Solon's due process rights and constituted reversible plain error. Thus, I respectfully dissent.

**I**

To understand the district court's actions in this case, some context is necessary. As the majority notes, the district court approved payment of up to $20,000 for Tami Loehrs' expert services. (Majority Op. 2.) Following submission of Loehrs' initial bill, the court stated "that woman is outrageous in her charges for what she did to travel from Arizona up to Casper." Although the trial judge acknowledged he had authorized payment of up to $20,000, the judge

continued that "it is going to be a cold day in hell before I ever authorize" payment to Loehrs of $15,000. In a later hearing, the court again commented on Loehrs, claiming to "have never heard a more abrasive witness than that." It then advised defense counsel that he did not need to use "this woman with pretty exalted ideas of her worth."

The court's derision of Loehrs continued into trial. When asked if she had reviewed certain virus logs, Loehrs responded, "Actually, this is about the point in my exam where I was stopped." The government objected and requested that the comment be stricken, but the district court went well beyond the government's request. Sua sponte, the court instructed the jury:

> Members of the jury, the witness just said that she was stopped and coupled with her testimony yesterday there is the implication that the court stopped her from working. That is absolutely untrue. It is a falsity, and you are instructed to ignore it. And we will hear no more such testimony. I never did stop this witness from working. I did stop her from submitting excessive bills to the United States, and that's all I ever did.

Against this backdrop, the court's actions during closing take on added significance. Defense counsel began to discuss what he viewed as a "double standard in this courtroom with regard to what people say and then holding them to it," implying that the prosecutor unfairly took Loehrs to task for inconsistencies in her testimony although the testimony of several government witnesses contained similar inconsistencies. Counsel then identified "a couple of

mistakes" Loehrs had made in her testimony, which he deemed "inconsequential." At that point, the judge left the courtroom, telling counsel to "just go right ahead." Defense counsel declined the court's invitation, explaining to the jury that if he "were to say something that caused [the prosecutor] to have some grief, and [the prosecutor] stood up and made an objection, there would be no one to rule." The prosecutor took control of the courtroom, suggesting the jury use the break "to get up and stretch, relax." A little more than five minutes later, the judge returned. He stated:

> Sorry for the interruption, but I did not intend for there to be one. But my secretary had announced just as I was leaving to start court that this was her afternoon to play canasta, and I had to get a couple letters out.

The judge's contempt for Loehrs is patent from the cold transcript. After instructing the jury that Loehrs was lying on the stand and had attempted to raid the federal treasury by submitting "excessive bills," the court simply could not bear to listen to defense counsel's discussion of her reliability. The judge's comments upon return only compounded the error, in that they were likely taken and understood by the jury as implying that a secretary's canasta game was more important than Solon's defense theory. Although I am not unsympathetic to the trial judge's frustration regarding the high cost of litigation and experts fees, the matter of Loehrs' fees should not have been handled in such an unorthodox manner.

## II

Because Solon's counsel, likely flummoxed by the incredible events he witnessed, failed to object to the judge's absence, I agree with the majority that we review only for plain error. Further, I agree that Solon has failed to demonstrate that the judge's actions constituted structural error. See United States v. Gonzalez-Huerta, 403 F.3d 727, 734 (10th Cir. 2005) (en banc). The judge's actions did not "affect the composition of the record," Rose v. Clark, 478 U.S. 570, 580 n.7 (1986), and we are "capable of finding that the error caused prejudice upon reviewing the record," Gonzalez-Huerta, 403 F.3d at 734. This case is unlike those upon which Solon relies for his structural error arguments, United States v. Mortimer, 161 F.3d 240 (3d Cir. 1998), and Riley v. Deeds, 56 F.3d 1117 (9th Cir. 1995). The harm here was not the judge's absence at a critical stage in trial, but his unspoken commentary to the jury.

Although the majority holds that the district court's actions constituted clear and obvious error, it concludes that Solon failed to demonstrate prejudice. (Majority Op. 11-13.) I must disagree. There is no denying that the government's case was strong. As the majority accurately recounts, child pornography was found on Solon's computer, and Solon admits to being online the night that pornography was downloaded. (Majority Op. 12-13.)

Nonetheless, Solon mounted a defense that a jury could have credited. He

argued that the child pornography was placed on his computer as a result of a computer virus or Trojan. Loehrs testified:

> [Solon's] computer had all of the symptoms, all of the things that you could need to have a vulnerable computer. He had Limewire. He had his IP address out there. He had no password. He had open ports. He had evidence of viruses and Trojans that further made his computer vulnerable.
>
> I have not done all of the investigation to prove that this computer was hacked into, but it looks really bad. It is very, very open, and very, very unsecure [sic].

This defense theory has been successfully employed in other cases, and has been the subject of some media attention. See Laurel J. Sweet, Probe Shows Kiddie Porn Rap Was Bogus, Boston Herald, June 16, 2008, at 5; John Schwartz, Acquitted Man Says Virus Put Pornography on Computer, N.Y. Times, Aug. 11, 2003, at C1.

The majority holds that Solon has not established "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." (Majority Op. 12 (quoting Gonzalez-Huerta, 403 F.3d at 733).) Although it is treacherous for appellate judges to attempt to predict the votes of jurors, I would hold that Solon has met his burden under the third prong of our plain error analysis. That is, he has shown that the error "affect[ed] substantial rights." United States v. Olano, 507 U.S. 725, 734 (1993) (quoting Fed. R. Crim. P. 52(b)). The inquiry is whether Solon has shown that, but for the court's error,

there was a reasonable probability of acquittal.  See United States v. Hasan, 526

F.3d 653, 665 (10th Cir. 2008).  "A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  Id. (quotation omitted).

Solon does not bear the burden of proving he is actually innocent; instead, "the

touchstone is simply whether the ultimate verdict is one worthy of confidence."

United States v. Robinson, 583 F.3d 1265, 1270-71 (10th Cir. 2009) (quotation

omitted).

I have no confidence in the jury verdict under review.  Had at least one

juror credited Loehrs' testimony, Solon's jury may well have found reasonable

doubt.  But the jury was unfairly prejudiced against Loehrs by the comments and

actions of the district court.  In our adversarial system, a criminal defendant is

entitled to stage a credibility contest refereed by a jury of his peers.  Solon was

not given this opportunity.  Instead, the district court instructed the jury that

Solon's primary witness was dishonest and that Solon's theory was unworthy of

the court's time.  It may as well have directed a verdict of guilty.

Because the majority decides this case on the third prong of plain error

review, it does not address whether the court's actions "seriously affect[ed] the

fairness, integrity, or public reputation of judicial proceedings."  Gonzalez-

Huerta, 403 F.3d at 732 (quotation omitted).  I would hold that Solon has satisfied

this prong as well.  The district court went beyond what might simply be

described as negative feelings toward a defense witness, actively impeaching

Loehrs by word and deed in derogation of its duty of neutrality.  When judges

behave in such a manner, our entire judicial system suffers.  Neutrality in judges:

> preserves both the appearance and reality of fairness, generating the feeling, so important to a popular government, that justice has been done by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him.

Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980) (quotation omitted).

### III

For the foregoing reasons, I respectfully dissent.