**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 17, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

CHARLES DENNIS FRIEDMAN,

     Defendant-Appellant.

No. 11-4152
(D.C. No. 2:05-CR-00933-DB-1)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

Charles Friedman has spent much of his adult life robbing banks. He's admitted to eight bank robberies in all — and he's committed many more violent felonies besides, ranging from attempted escape to assault with a deadly weapon. His current appeal arises from the robbery of a Chase bank in Utah in November 2005. When it came time for sentencing, and relying on a largely unexplained "feeling," the district court imposed a prison term of 57 months — even though the guidelines advised a sentence of between 151 and 188 months for a career

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

offender like Mr. Friedman and there was "absolutely nothing" in his history to distinguish him in a positive way from other career offenders.  *See United States v. Friedman*, 554 F.3d 1301, 1309 (10th Cir. 2009).  On appeal this court did what it does only very rarely, it vacated the district court's sentence as substantively unreasonable.  *Id.* at 1309-10, 1312.  After remand, the district court assigned a new sentence of 151 months, a result Mr. Friedman now asks us to undo for a variety of reasons, procedural and substantive alike.  Finding no merit in any of his arguments, we affirm.

I

Turning first to Mr. Friedman's procedural challenges, as best we can tell he presses five central complaints.  In his view, the district court erred by (1) presuming the guidelines were reasonable; (2) failing to explain adequately the sentence it selected; (3) relying on clearly erroneous facts concerning Mr. Friedman's medical condition; (4) neglecting to consider his post-sentencing rehabilitation efforts; and (5) conducting an ex parte conversation with the United States Marshals Service.  We address each of these complaints in its turn.

First, Mr. Friedman charges the district court with refusing to consider a non-guidelines sentence unless and until he first proved that a within-guidelines sentence was unreasonable.  And, no doubt, if the district court had behaved as Mr. Friedman describes, if the court had imposed on him the burden of establishing the guidelines' unreasonableness, that would constitute error under

our decision in *United States v. Arrevalo-Olvera*, 495 F.3d 1211, 1213 (10th Cir. 2007). The difficulty for Mr. Friedman is the record does not indicate anything of the sort happened here.

District courts are presumed to know and follow the law. *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1201 (10th Cir. 2007). Accordingly, we do not assume the district court erroneously gave undue weight to the advisory guidelines on someone's say so. It is Mr. Friedman's burden to prove it. And there is nothing in the record before us to persuade us the court committed any error in this case. The district court never said it thought it had to find a guideline sentence unreasonable before considering a non-guideline sentence. To the contrary, the court gave every indication — repeatedly — that it had reached its final sentencing decision only after considering all relevant sentencing factors prescribed by law.

To be sure, the court *began* by noting that it had considered the guidelines. But this the court had to do — after all and even now the advisory guidelines remain "the starting point and the initial benchmark" in any federal sentencing process. *Gall v. United States*, 552 U.S. 38, 49 (2007). The court then proceeded to explain, clearly and unequivocally, that it had considered all the relevant sentencing factors enumerated by Congress in 18 U.S.C. § 3553: "I'm imposing a sentence of 151 months consistent with the advisory guidelines set forth in 4B1.1 with respect to career offenders. I considered all of the appropriate [§] 3553

factors and find that the nature and circumstance of the offense and the history and the characteristics of the defendant require a sentence of 151 months." Among the history and characteristics the court found particularly compelling and discussed at length was Mr. Friedman's repeated disregard for the law, a pattern the court said in its judgment "qualif[ied] him as a career offender" and warranted a lengthy sentence. "The recidivism is undeniable." The court explained, as well, that reducing prison time in favor of more supervised release wasn't a sound option in this case given Mr. Friedman's record of supervised release violations: "I can't ignore his record." In fact, and as the court discussed, too, Mr. Friedman committed the bank robbery at issue in this case while on supervised release for a 1999 bank robbery and while on parole for a still *another* bank robbery.

Ultimately, the district court explained its judgment that Mr. Friedman's record was so extensive that he merited a sentence at the top end of the guidelines range, 188 months. The court then proceeded to temper that sentence somewhat, reducing it to 151 months, but only and expressly in order to account for the fact Mr. Friedman already faced a separate upcoming prison term of 40 months as a result of his violating the terms of his supervised release by committing the 1999 bank robbery. The court explicitly stated, as well, that it "reached [its] opinion completely and independently from the Tenth Circuit['s opinion vacating Mr. Friedman's earlier sentence] . . . based on a completely independent assessment of the record."

In light of all this, we see no reason to doubt the presumption that the court followed the law and applied its independent judgment at sentencing. It not only specified its understanding that the guidelines are "advisory" but proceeded to analyze the applicable § 3553 factors in detail and according to its own lights.

Second, Mr. Friedman maintains that, even if the district court did exercise independent judgment, it failed to explain adequately the sentence itself. When a district court imposes a sentence within the advisory guideline range, however, it need only provide "a general statement of [its] reasons" and is not required to discuss in detail every § 3553(a) factor or respond to every argument it rejects in arriving at a reasonable sentence. *Ruiz-Terrazas*, 477 F.3d at 1199-1202 (internal quotation mark omitted). In this case, the district court surely did more — much more — than that. Its explanation for its sentence and subsequent dialogue with counsel in response to questions about the court's sentence cover no fewer than 17 pages of transcript. Every time counsel sought clarification, further explanation was given.

Mr. Friedman's real complaint seems to be that, despite this extensive explanation, the court never said why it started its analysis at the high end of the guidelines or subtracted 37 months, instead of 40, from the high end of the guidelines range. In fact, however, the court expressly discussed both of these things.

The court said it started at the top end of the guidelines because it found Mr. Friedman's history of crime and recidivism extraordinary. The court then proceeded to explain the rationale for its 37 month reduction. It acknowledged that Mr. Friedman already faced a new term of 40 months in prison for violating the terms of his supervised release. And, as Mr. Friedman notes, the district court expressed the wish to adjust his sentence to account for this additional sentence. All this, Mr. Friedman insists, means he should have received a sentence of 148 months (188 less 40). But Mr. Friedman overlooks the court's explanation that it intended only "to reduce [the sentence] *most* of that 40 months and *put it at the low end*" of the guidelines range. The court explained its view that it thought the supervised release sentence was worthy of some consideration, but when balanced against Mr. Friedman's history and characteristics not worth so much consideration as to take him outside the bottom end of the recommended range for career offenders (151 months). Mr. Friedman might disagree with the *substance* of this judgment, but from an *explanatory* or *procedural* perspective, the court's chain of reasoning is perfectly clear.

Third, 18 U.S.C. § 3553(a)(2)(D) requires the sentencing court to consider how "to provide the defendant with needed . . . medical care . . . in the most effective manner." In this case, the district court concluded that the Bureau of Prisons (BOP) was well suited to attend to Mr. Friedman's medical needs (he suffers from hepatitis) and, thus, that a prison term in BOP's custody was

appropriate. Mr. Friedman now asserts the district court's conclusion on this score rests on clearly erroneous facts. *See United States v. Halliday*, 665 F.3d 1219, 1223 (10th Cir. 2011) (district court factual findings may be reversed only in the presence of clear error). After careful review of the record, however, we cannot agree. The record reveals that, though Mr. Friedman in the past may not have received every test he sought while in BOP's custody, he was regularly tested and monitored. The record also reveals that medical professionals at the time concluded his hepatitis was following a benign course and no additional treatment or testing was warranted. In light of this record, we cannot say the district court's finding that BOP could care well for his medical needs was clearly erroneous.

Fourth, Mr. Friedman says the district court failed to consider various pieces of evidence he submitted, including evidence about his recent rehabilitative efforts and a letter he wrote in 2011. But whatever other problems may attend this contention, the district court expressly stated that it "read everything that [the parties] submitted" and was "acquainted with all of the materials." It specifically referenced Mr. Friedman's letter, too, and noted that it "was helpful in understanding some things." Simply put, the district court said it reviewed Mr. Friedman's materials, and we are given no persuasive reason to discredit its representations.

Finally, Mr. Friedman says he was prejudiced by ex parte contacts between the district court and the United States Marshals Service and he seeks an evidentiary hearing to explore the issue further. According to Mr. Friedman, the court learned from the Marshals Service that Mr. Friedman was a difficult inmate and, he alleges, the court was improperly influenced by that fact at sentencing. The record, however, does not support an inference that any ex parte conversation took place on the topics that worry Mr. Friedman. Besides, even assuming it had and even assuming such a conversation was impermissible, the record before us suggests no prejudice to Mr. Friedman. *See generally* Fed. R. Crim. P. 52(a). To the contrary, both parties' sentencing submissions to the district court discussed Mr. Friedman's jailhouse behavior candidly and at length: Mr. Friedman's own written submission went so far as to represent that "[j]ail administrators no less than detest him" and "find him a 'difficult' customer to house." There's no hint in the record that the court did learn or might have learned from the Marshals anything it did not learn from the parties themselves and there is, accordingly, no warrant for further inquiry into the issue.

## II

That brings us to Mr. Friedman's substantive challenge to his sentence. He says his 151 month sentence is unreasonable. But, at least at the appellate level, a district court's decision to issue a within-guidelines sentence is presumed reasonable. *Rita v. United States*, 551 U.S. 338, 347-48 (2007). Under our

precedents, it is incumbent on an appealing defendant to rebut that presumption "by demonstrating that the sentence is unreasonable when viewed against the other factors delineated in § 3553(a)." *United States v. Sells*, 541 F.3d 1227, 1237 (10th Cir. 2008). This is a burden Mr. Friedman simply cannot carry. Both the district court in its thoughtful and thorough sentencing discussion on remand, and this court in its earlier and extensive published opinion, explain why a substantial sentence was appropriate in this case and we discern nothing we might usefully add to those discussions.

III

Two other arguments remain to address. Mr. Friedman contends the district court abused its discretion in denying Mr. Friedman's motion for a medical expert. Separately, he argues the court erred by not ordering an updated presentence report for use in the resentencing.

A person who is "financially unable to obtain investigative, expert, or other services necessary for adequate representation" may request these services be paid for at public expense in an ex parte application to the court. *See* 18 U.S.C. § 3006A(e)(1). Applications are to be granted when the expert's services are "necessary to an adequate defense." *United States v. Solon*, 596 F.3d 1206, 1209 (10th Cir. 2010). Whether this necessity standard is satisfied, however, is not something we assess de novo on appeal; it is, instead, "a matter committed to the

sound discretion of the district court and will not be disturbed on appeal absent a showing of prejudice." *United States v. Sloan*, 65 F.3d 861, 864 (10th Cir. 1995).

In this case, Mr. Friedman already had a medical expert in his defense stable: Dr. Scott Stallings. Dr. Stallings reviewed Mr. Friedman's records and ultimately issued an opinion favorable to Mr. Friedman at sentencing. Despite that — and despite the fact the government at the time did not dispute any of Mr. Friedman's claims concerning his condition and did not present any evidence or argument on the matter — Mr. Friedman faults the district court for refusing to pay for a second physician to assess Mr. Friedman's medical condition. We cannot say that it abused its discretion in doing so. Mr. Friedman doesn't suggest any way in which a second doctor's evaluation would have added materially to the evidence before the district court. And without that showing, there is no prejudice and can be no abuse of discretion. Neither do we see any reversible error in the district court's refusal to grant an evidentiary hearing on this issue.

Separately, Mr. Friedman complains that the district court relied on the presentence report from his first sentencing hearing and did not order an updated PSR after his case was remanded. A new PSR is not required, however, if "the parties are given a full opportunity to be heard and to supplement the PSR as needed." *United States v. Quintieri*, 306 F.3d 1217, 1234 (2d Cir. 2002); *see also* Fed. R. Crim. P. 32(c)(1)(A)(ii) (court must receive a presentence report before it imposes sentence unless "the court finds that the information in the record

- 10 -

enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553, and the court explains its finding on the record").  At oral argument in this court, Mr. Friedman acknowledged that any information in an updated PSR would have only verified information either he or the government already provided to the district court in their supplemental sentencing submissions. Accordingly, it is clear no error took place here either.

The judgment of the district court is affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge