## THE STATE OF KANSAS v. ANNA BEUERMAN.

### No. 11101.

1. JUROR WITH OPINION—*formed and expressed, which evidence required to change, not qualified by belief that he can give the accused a fair trial.* A person who has read a newspaper account of a homicide, and has also learned the facts pertaining to the same from one who assumed to know and state them, and, based thereon, has formed and expressed an opinion as to the guilt of the accused which it would require evidence to remove, is not a qualified juror, although he may state that he believes he could give the accused a fair and impartial trial.

2. NON-PROFESSIONAL OPINION—*as to sanity, admissible where based on conduct observed by witness himself and testified to by him.* A non-professional witness, acquainted with one whose sanity is in question, may, after stating the facts, words and conduct of such person, which have come under his personal observation, and based upon these, express his opinion as to the sane or insane state of such person's mind.

3. ——— *such opinion must be received if witness's observation afforded him fair basis; its weight is for jury.* If the witness's knowledge of the acts, words and conduct of the person claimed to be insane is meager, his opinion will not be as valuable as that of one who has had better opportunities of knowing and who is thoroughly informed in that respect; but what weight the opinion shall receive is a question of fact for the jury.

4. ABSENCE OF JUDGE DURING ARGUMENT—*of case to jury, so that proceedings for a time not under his control, ground for complaint by accused.* It is the duty of the presiding judge to be present throughout the trial, to supervise the proceedings, and see and hear all that transpires during the trial, and especially during a criminal trial where the highest penalty of the law may be inflicted. If the presiding judge leaves the court-room, goes out of the sight and hearing of the jury and counsel, and temporarily relinquishes control over the trial, the accused has good cause to complain.

Appeal from Douglas District Court. Samuel A. Riggs, Judge. Opinion filed July 8, 1898. *Reversed.*

*L. C. Boyle*, Attorney General, *A. C. Mitchell*, County Attorney, for the State. *S. D. Bishop*, of counsel.

*J. H. Mitchell* and *J. Q. A. Norton*, for appellant.

JOHNSTON, J. Anna Beuerman was convicted of murder in the second degree for the killing of her husband, August Beuerman, and was thereupon sentenced to confinement at hard labor for a term of ten years. The killing was admitted, but it is claimed that she was not responsible for the act, because of insanity.

The deceased and the defendant were married more than ten years before the homicide, and had lived together on a farm with the parents of the defendant. No children were born of the marriage, although it is claimed that the defendant was very desirious of having children. In her behalf it is said, and there was some testimony to show, that her husband was lacking in physical power, amounting to sexual disability, and that he had not informed her of his condition before marriage; that the lack of virility and the impotency of her husband preyed upon her mind, and that by constant brooding over the situation her mind was finally unbalanced. It is further claimed that, while in this condition and irresponsible, she obtained her father's revolver, and without any quarrel or apparent provocation shot her husband, and at once turned the revolver upon herself and discharged a bullet through her chest and near her heart; evidently intending to destroy her own life. The mental condition of the defendant at the time the shot was fired was the principal question in the case, and the one toward which the greater part of the testimony was directed.

A number of exceptions were taken to the rulings on the trial; the first of which was upon the overruling of a challenge to the competency of Pontious, who was called as a juror. From his examination it appeared that he had talked with persons who knew the facts in the case, that he had read newspaper accounts of it, and,

1. Juror with opinion not qualified, when.

based on the information so obtained, had formed and expressed an opinion as to the guilt of the defendant. Upon a further examination by the court, he said the persons with whom he had talked assumed to know the facts ; that the opinion which he formed and expressed was one that it would take evidence to remove. When asked as to whether it was an opinion or a mere impression, he stated that it was an opinion. He was then asked whether he could give a fair and just consideration to the testimony and render a fair and impartial verdict in the case, when he stated that he believed he could, and that he would be guided by the testimony as it was related, and also by the charge of the court.

We think Pontious was not qualified to sit as a juror, and that the court erred in overruling the challenge. The statute provides that "it shall be a good cause of challenge to a juror that he has formed or expressed an opinion on the issue or any material fact to be tried." Criminal Code, § 205. He insisted throughout his examination that he entertained an opinion, and not a mere impression. It was not based on newspaper account alone, or mere rumor, but he had learned the facts from those who assumed to know them, and on these had formed and expressed an opinion in regard to the guilt of the defendant. It is true he stated that he believed that he could give the defendant a fair and impartial trial, but a person holding an opinion formed in such a way and of such a fixed and positive character does not possess the qualifications which the law requires. *The State v. Miller*, 29 Kan. 43 ; *The State v. Beatty*, 45 id. 492, 25 Pac. 899 ; *The State v. Snodgrass*, 52 id. 174, 34 Pac. 750 ; *The State v. Vogan*, 56 id. 61, 44 Pac. 352.

On objection by the State, the court excluded the opinions of non-professional witnesses as to the men-

tal capacity of the defendant. Glenda Reynolds, who was acquainted with the defendant, and with her had attended a meeting of the Kansas Freethinkers' Association held at Forest Park, Ottawa, in August preceding the homicide, testified as to her appearance, manner and conduct at that time, as well as on another occasion when she had been with her. The meeting continued for several days and the witness and the defendant occupied the same room at nights, and hence the witness had a fair opportunity to observe the peculiarities in the appearance, conversation and conduct of the defendant, which she related at length to the jury, and upon being asked what her judgment was as to the mental condition of the defendant, the court sustained a general objection to the testimony. The specific ground of objection to the testimony was not stated by counsel, nor was any reason for the ruling given by the court.

*2. Non-professional opinion admissible, when.*

Although formerly a matter of dispute, it has come to be a well-settled principle that witnesses who are not experts may express their judgment as to the sane or insane state of a person's mind. The opinions so given must be the result of personal observation of the person whose mental condition is in question, after first stating the facts which the witnesses have observed. *Baughman v. Baughman*, 32 Kan. 538, 4 Pac. 1003; *Carpenter v. Hatch*, 64 N. H. 573; *Conn. M. L. Ins. Co. v. Lathrop*, 111 U. S. 612; 7 Am. & Eng. Encyc. Law, 504. It must appear, of course, that the witness has had adequate opportunities to observe the appearance and conduct of the person whose sanity is in question; but when it appears from the facts related before the jury that the witness has a fair basis for an opinion, it must be received. It is not for the court to decide the weight or effect to be

given to the opinion; but the jury, knowing the witness's opportunity for observing the mental condition of the defendant, and the circumstances and reasons upon which he bases his judgment, can determine the weight to which the testimony is entitled. If his knowledge of the acts, words and conduct of the person claimed to be insane is meager, his opinion will not be as valuable nor entitled to the same consideration as that of one who has had better opportunities of knowing and who is thoroughly informed in that respect; but what weight the opinion shall receive is a question of fact for the jury.

The extent of the knowledge which a witness must possess in order to testify cannot well be defined; but from an examination of the record we have no doubt that the witness Reynolds had sufficient knowledge, as shown by her testimony, to entitle her to express an opinion. During the three days that she was with the defendant at Forest Park she observed that the defendant was laboring under great mental excitement, that she acted in a peculiar way, cried a great deal, and part of the time "she seemed to wander in her mind to some extent." When asked to take the witness to the ladies' lavatory, the defendant conducted her in another direction and for about half a mile around a race-track there was in the park; but finally seemed to recover her mind and then took witness to the lavatory. At another time she talked of committing suicide, and she would have done so long ago if she "was not afraid of a hell."

We do not decide anything as to the mental condition of the defendant, but simply hold that the testimony of the witness was of such a character as entitled her to express a judgment in regard to the sanity or insanity of the defendant. The opinion of another witness, who was quite well acquainted with the de-

fendant and had observed conduct indicating mental disorder, was excluded for a like reason.

Complaint is made of the rulings of the court in charging the jury, but we find nothing substantial in any of the objections to which our attention has been called.

Another objection is based on the temporary absence of the presiding judge during the progress of the trial. It was shown on the motion for a new trial, beyond dispute, that during the argument in behalf of the defendant the judge left the bench and passed into an adjoining room, closing the door behind him, and that he remained there for a period of about ten minutes. During this time the judge appears to have been out of sight and hearing of the jury and counsel and where he could not hear the argument or exercise control over the proceedings in the court-room.

4. Absence of judge complainable, when.

The absence of the judge during the progress of a trial cannot be sanctioned. The argument of a cause is an important part of the trial, and it is essential that it should be conducted in the presence and hearing of the judge who must ultimately approve the proceedings and render judgment. The hearing and conduct of the argument is almost, if not quite, as important as the hearing and reception of testimony ; and the judge should be present to see that counsel in their arguments do not go beyond the bounds of legitimate discussion and to determine any objections that may be raised. In fact, there can be no court without a judge, and he cannot even temporarily relinquish control of the court or the conduct of the trial. It is necessary that he should hear all that transpires in the trial in order that he may intelligently review the proceedings upon the motion for a new trial. It is especially important that

he should be visibly present every moment of the actual progress of a criminal trial, where the highest penalty of the law may be imposed. The defendant is entitled to be tried in a court duly constituted, and if the presiding judge abandons the trial or relinquishes control over the proceedings the accused has good cause to complain. *Meredith v. The People*, 84 Ill. 479; *Thompson v. The People*, 144 id. 378; *The State v. Smith*, 49 Conn. 376; *Turbeville v. The State*, 56 Miss. 793; *Palin v. The State*, 38 Neb. 862; *O'Brien v. The People*, 17 Col. 561, 31 Pac. 230. The fact that the court may not see or hear everything occurring in the court-room, or that he may step into an adjoining room, but not out of hearing of the proceedings, is not necessarily prejudicial to the interests of the defendant in every case; but the presiding judge cannot safely absent himself from the trial or relinquish control over the proceedings during the trial. In view of the conclusion we have already reached in the present case, it is not necessary to determine whether the interests of the defendant were prejudicially affected by the absence of the trial judge, or whether such absence constitutes reversible error.

None of the other exceptions appear to be well taken, but, for the errors mentioned, the judgment of the District Court will be reversed and the cause remanded for a new trial.