STATE OF IOWA v. M. R. HAMMER, Appellant.

**Self Defense:** HELD NOT AVAILABLE. Defendant was engaged in a conflict in which he stabbed his opponent six times. Six months previously they had a controversy in which defendant offered his opponent a dollar bill if he would strike defendant, and said he would "kill him if he did." Afterwards defendant said to others that he would knife his opponent if he ever got a chance. Just before the conflict, defendant abused his opponent. The evidence was in conflict as to who struck the first blow. Defendant's opponent was the larger man but he was not armed. *Held,* that defendant was not entitled to the plea of self-defense.

**Absence of Judge During Argument:** HELD NO GROUND FOR REVERSAL: *Waiver.* After the evidence was closed on the trial of defendant for assault with intent to commit murder, the attorneys agreed that the judge might retire to a near-by room to prepare his instructions, and he did so; remaining out of hearing during most of the opening argument. There was no objection to his absence, or request for his return, or showing of prejudice on account of his absence. *Held,* that the temporary absence of the judge under such circumstances is not ground for reversal.

*Appeal from Jasper District Court.*—HON. C. A. BISHOP, Judge.

THURSDAY, APRIL 10, 1902.

THE defendant was convicted of an assault with intent
to commit murder, and appeals.—*Affirmed.*

*HcHenry & McHenry* for appellant.

*Charles W. Mullan,* Attorney General, and *Chas. A.
Van Vleck,* Assistant Attorney General, for the State.

SHERWIN, J.—The defendant and one Oscar Wheat-
craft had an altercation on the street in the city of Newton
in March, 1900, at which time, after a somewhat wordy war,
in which no blows were struck, the defendant offered Wheat-
craft a dollar if he would strike him, and said he
would "kill him if he did." After this affair, the de-
fendant, in conversations with others, said Wheat-
craft was a son of a bitch, and that he would knife him if
he ever got a chance. On the 22d day of September, 1900,
the defendant and Wheatcraft first met in front of McMur-
ray's grocery store. In the conversation between them there,
the defendant called Wheatcraft a liar and a coward. Wheat-
craft told him to go away; that he didn't want to talk to him;
and accused the defendant of carrying a knife. Wheatcraft
then went into the store, and the defendant passed west on
the street until he met Wheatcraft's father, with whom he
stopped to talk; and while so engaged the son, Oscar, went
up to them, and said to his father, "You wouldn't speak to a
dog would you?" The defendant then said to Oscar, "Do
you mean that for me?" to which the reply was, "Take it as
you like." The defendant then said, "You are a low-lived
son of a bitch," whereupon the conflict which resulted in the
stabbing of Oscar Wheatcraft began. The evidence is in con-
flict as to which of the two struck the first blow, and as to the
time when the knife was first used by the defendant. When
it began they were on the sidewalk, and when separated they
were about the middle of the street. Wheatcraft was a large,

powerful man, weighing some 50 pounds more than the defendant, and in all probability forced the fighting, but it is not claimed that he was armed with any kind of a weapon. He was cut in two places on the left arm above the elbow. There were two cuts on the left side of his body, and two in the abdomen, one of which passed clear through the wall thereof. It is strenuously contended that the evidence conclusively shows the use of the knife to have been purely in self defense, and that a new trial should be granted for this reason, but we do not so view the record; nor do we think the verdict against the weight of the evidence. While the record does not disclose the exact character of the knife used by the defendant it does appear therefrom that it was some kind of a sheath knife; and it is very evident from what had transpired between these parties before this encounter, and from the statements made by the defendant, that he had armed himself, and, further, that he had done so with the intention of precipitating a quarrel with Oscar Wheatcraft, in which this deadly weapon could be used. The rule that mere words will not justify an assault is well settled; but it is equally as true that he who uses vile and opprobrious language for the purpose of provoking an assault on the part of a self-respecting and courageous man cannot use a deadly weapon on his assailant, and escape the consequences under the plea of self defense. Wharton, Criminal Law, section 986; *State v. Neeley,* 20 Iowa, 108; *State v. Cross,* 68 Iowa, 180.

After the evidence was closed the attorneys for the state and the defendant agreed that the judge might retire to a near-by room for the purpose of preparing his instructions. He did so, and remained out of the court room, and out of hearing of the proceedings, during most of the opening argument. He was, however, in the court room two or three times during that argument. No complaint was made of his absence, and no request made for his return; nor is there any showing of special prejudice on ac-

count of his absence. It is not denied that his presence there
at that time was waived by the defendant, but it is contended
that a defendant in a criminal case cannot waive any of his
constitutional rights.    In the trial of a criminal case the
court should always be where he can hear all parts of the
trial.    It is never safe to be behind closed doors while the
trial is going on.    But while condemning this practice, we
are not prepared to say that a defendant may not legally
waive the physical presence of the judge temporarily   dur-
ing the argument of the case, particularly where
no showing of misconduct on the part of attorneys or others
in the court room is made, which would indicate prejudice
to the defendant.    As has been well said, the sanctity and
dignity of judicial proceedings should at all times be main-
tained; and it seems to be the pretty general holding, where
the question has been involved, that the absence of the judge
from the court room during any part of the time while the
trial is progressing may be ground for reversal.    See *Turbe-
ville v. State,* 56 Miss. 793; *O'Brien v. People,* 17 Colo. 561
(31 Pac. Rep. 230); *Palin v. State,* 38 Neb. 862 (57 N. W.
Rep. 743); *State v. Smith,* 49 Conn. 376; *Thompson v.
People,* 144 Ill. 378 (32 N. E. Rep. 968); *Hayes v. State,*
58 Ga. 35; *Meredith v. People,* 84 Ill. 479; *People v. Tup-
per,* 122 Cal. 424 (see note in 41 L. R. A. 569, 55 Pac. Rep.
125, 68 Am. St. Rep. 44).    And in all of the cases, ex-
cept *Meredeth v. People, supra,* the absence of the judge
was objected to by the defendant; and in all of these cases,
except *People v. Tupper,* it is affirmatively shown that the
defendant was prejudiced thereby.    In *State v. Beuerman,*
59 Kan. 586 (53 Pac. Rep. 874), relied on by the defendant,
the question whether it was reversible error for the judge to
absent himself during the trial was not determined.    In
*Turbeville v. State* it is said that a defendant cannot consent
to the absence of the judge; but it is held that his absence
was not shown to have been such as to prevent the assertion
of control over the proceedings, and the reversal was on other

grounds. *Hayes v. State* condemns the practice, but does not reverse on that ground. *State v. Smith* holds that the judge should have been present, but, as no prejudice was shown on account of his absence, does not reverse on account thereof. In the case in 84 Ill. 479, the judge called a member of the bar to preside, and left the court room. It is held that members of the bar cannot exercise judicial functions, even by consent; and, as misconduct of attorneys during the absence of the judge was claimed, it is held that the defendant did not have the trial guarantied by the constitution. In *State v. Carnagy,* 106 Iowa, 483, the judge was absent during a part of one of the arguments, to which objections were interposed when he returned. He refused to rule on the objections because he had not heard the argument, and it is said: "But we think the absence of the judge from the court room, beyond the hearing of the proceedings, when not shown affirmatively to have been without prejudice, is in itself error alone sufficient to warrant the reversal of a judgment." That is a case where the presence of the judge was not waived, and where his rulings were asked, and refused because of his absence; and we further say, whether error of the judge in temporarily relinquishing control of the proceedings in criminal cases may be cured by an affirmative showing that no prejudice resulted therefrom, we do not determine. It is undoubtedly the correct doctrine that when a person is on trial for his life or his liberty, and is denied any of his constitutional rights, he has been tried without due process of law; but "due process of law," in its legal sense, does not mean mere form. It means the due course of legal proceedings which are intended to protect the individual from the "arbitrary exercise of the powers of government unrestrained by the established principles of private rights and distributive justice." *Bank v. Okley,* 4 Wheat. 235 (4 L. Ed. 559). So a defendant in a criminal trial, who has been deprived of some substantial right by the temporary absence of the judge dur-

ing any part of the trial, may justly complain; but where he has agreed to this temporary absence, and the judge is where he can at once be brought into the court room, we think there must be a showing of prejudice on account of the absence of the judge before a reversal can be had. We have held that a defendant may waive his constitutional right to be confronted by the witnesses against him, because it is a personal right, and not jurisdictional. *State v. Polson,* 29 Iowa, 133; *State v. Fooks,* 65 Iowa, 452. It certainly cannot be legally said that a court having jurisdiction to try a criminal case will lose it during the trial by the judge temporarily being in another room with the consent of the defendant; and, if this be true, why may not the temporary absence of the judge during argument be waived, and the defendant be bound by such waiver, in the absence of a showing of prejudice? Believing, as we do, that such procedure, under such circumstances, does not deprive the defendant of a trial by due process of law, we are constrained to hold it a matter that the defendant may waive, and that, where there is no showing of prejudice on account of the absence of the judge, we will not reverse. As bearing on this question, see *State v. Porter,* 105 Iowa, 677. In this case there is not only no showing of prejudice, but the record affirmatively shows there was none.

The judgment of the district court is AFFIRMED.