No. 113,228

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAQUANTRIUS S. JOHNSON,
*Appellant*.

SYLLABUS BY THE COURT

1.

There is no more fundamental right in the United States than the right to a jury trial.

2.

The invited error doctrine is inapplicable when a constitutional error is structural. Structural errors are so intrinsically harmful that automatic reversal is required without regard to existence of effect on outcome.

3.

Errors are structural when they defy harmless-error analysis because they affect the framework within which the trial proceeds.

4.

It is structural error for a trial judge to sleep during a criminal trial.

1

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed March 10, 2017. Reversed and remanded with directions.

*Samuel Schirer*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BUSER and LEBEN, JJ.

HILL, J.: We reverse Daquantrius S. Johnson's firearm convictions because the trial judge fell asleep during his trial. We see no option other than granting Johnson a new trial for such an error.

The State charged Johnson with criminal possession of a firearm by a convicted felon, aggravated assault, and criminal discharge of a firearm. After his conviction, the court imposed a 43-month sentence, 12 months' postrelease supervision, and lifetime registration. In this direct appeal, Johnson raises 10 issues, but we focus on the first. Basically, we must answer the question: What are the legal consequences of a judge falling asleep on the bench during a criminal trial? After that, we will address two other issues that may have an impact on a new trial.

On the morning of the second day of the trial, one of the jurors pulled the bailiff aside because the juror had observed the trial judge sleeping during the trial the day before. The juror asked the bailiff whether Johnson could have a fair trial. This remark was passed on to the judge. The trial judge acknowledged on the record that he "did nod off some." Addressing this issue, the judge told the jury:

"You are the trier of facts. I decide what evidence you will hear and what instructions you will receive. I don't believe during the course of this trial yesterday afternoon there were

2

any objections raised that I had to make rulings on that would have been affected by my nodding off."

The judge asked whether Johnson wanted to make a motion for a mistrial based on the conduct. Defense counsel stated, "Not at this time. We're ready to proceed." The afternoon session included opening statements and part of the victim's testimony.

Johnson contends on appeal that a sleeping judge is an absent judge, and structural error occurs when a judge fails to preside over a jury trial. Johnson does acknowledge that he did not object to the trial judge's "nodding off" but now contends that he may raise the issue for the first time on appeal to prevent the denial of his fundamental right to a jury trial.

For its part, the State argues that we should not consider this issue for the first time on appeal. If we do address the issue, the State contends it is invited error; and if we cannot agree that it is invited error, then we must reject the argument because Johnson has failed to show any prejudice to his case.

We address this issue because Johnson's newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). But, more importantly, there is no more fundamental right in the United States than the right to a jury trial. *State v. Bowers*, 42 Kan. App. 2d 739, 740, 216 P.3d 715 (2009). This is an issue that cannot be ignored. We now look to the question of invited error.

After the judge admitted to sleeping during the trial, Johnson's counsel declined the court's invitation to move for a mistrial. On appeal, Johnson contends the invited error doctrine is inapplicable because the error was structural in nature. The State argues to the contrary.

3

It is fundamental that a litigant may not invite error and then complain of that error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). This long-standing rule supports the common-sense notion that parties cannot complain about their own conduct at trial or about rulings they asked a trial judge to make. *State v. Hargrove*, 48 Kan. App. 2d 522, 531, 293 P.3d 787 (2013).

This doctrine also binds trial counsel to strategic decisions and deters parties from asking a judge to act in a certain way just to litter the record with error in order to provide grounds for appeal of an adverse judgment. *Hargrove*, 48 Kan. App. 2d at 532. Indeed, the *Hargrove* court held that an invited jury instruction error cannot be asserted as error on appeal when the instruction was proposed for a tactical advantage. 48 Kan. App. 2d at 547. In *Verser*, our Supreme Court applied the invited error doctrine when a judge gave the defendant the option of having a mistrial declared, and instead the defendant chose to proceed with the trial. 299 Kan. at 784.

But there are limits to the doctrine's application. The invited error doctrine is inapplicable when a constitutional error is structural. Structural errors are so intrinsically harmful that automatic reversal is required without regard to existence of effect on outcome. *State v. Hill*, 271 Kan. 929, 934, 26 P.3d 1267 (2001), *abrogated on other grounds by State v. Voyles*, 284 Kan. 239, 252-53, 160 P.3d 794 (2007).

Interestingly, few constitutional errors are structural errors. The short list of structural errors includes:

- total deprivation of counsel;
- lack of an impartial trial judge;
- denial of right to self-representation at trial;
- violation of a right to a public trial; and

4

- erroneous reasonable doubt instruction. See *United States v. Marcus*, 560 U.S. 258, 263, 130 S. Ct. 2159, 176 L. Ed. 2d 1012 (2010).

We note that these errors cannot be cured by anything other than a new trial.

Simply put, the issue at the heart of this case is whether the fact that the judge slept during a portion of a criminal trial constitutes structural error. If so, Johnson's convictions must be reversed. We hold that the judge sleeping during a criminal trial is a structural error.

Errors are structural when they defy harmless-error analysis because they affect the framework within which the trial proceeds. Two recent Kansas cases come to mind. In *State v. Jones*, 290 Kan. 373, Syl. ¶ 7, 228 P.3d 394 (2010), the court held a violation of the Sixth Amendment right to counsel was subject to structural error analysis. Then in *State v. Womelsdorf*, 47 Kan. App. 2d 307, 323, 274 P.3d 662 (2012), the court ruled that the lack of an impartial judge is a structural error. If we cast our research net outside the state, more illumination is produced.

In *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991), the Court distinguished mere trial errors—*e.g.*, the admission of an involuntary confession—from structural errors—*e.g.*, the total deprivation of the right to counsel at trial and an impartial judge. Trial errors are errors which occur when evidence is presented and may be assessed in the context of other evidence presented to determine whether the error prejudiced the defendant. 499 U.S. at 307-08. Structural errors differ because they are

> "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards. The entire conduct of the trial from beginning to end is

5

obviously affected by the absence of counsel for a criminal defendant, just as it is by the presence on the bench of a judge who is not impartial." 499 U.S. at 309-10.

The Court listed other structural errors:

- unlawful exclusion of members of the defendant's race from a grand jury;
- the right to self-representation at trial; and
- the right to a public trial. 499 U.S. at 310.

"Each of these constitutional deprivations is a similar structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. 'Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.'" 499 U.S. at 310.

In *Gomez v. United States*, 490 U.S. 858, 876, 109 S. Ct. 2237, 104 L. Ed. 2d 923 (1989), the United States Supreme Court held that it was structural error for a magistrate, rather than a statutorily authorized judge, to conduct jury selection.

"Among those basic fair trial rights that '"can never be treated as harmless"' is a defendant's 'right to an impartial adjudicator, be it judge or jury.' [Citations omitted.] Equally basic is a defendant's right to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside." 490 U.S. at 876.

As early as 1899, the United States Supreme Court, explaining the unique role of the trial judge, held that a trial by jury is a trial

"*in the presence and under the superintendence of a judge empowered to instruct [the jury] on the law and to advise them on the facts, and . . . to set aside their verdict, if, in his opinion, it is against the law or the evidence.* This proposition has been so generally admitted, and so seldom contested, that there has been little occasion for its distinct

6

assertion." (Emphasis added.) *Capital Traction Co. v. Hof*, 174 U.S. 1, 13-14, 19 S. Ct. 580, 43 L. Ed. 873 (1899).

How can a sleeping judge supervise anything other than his or her dreams? Is the trial really "in the presence" of a sleeping judge? Obviously, this issue defies harmless error analysis.

Some Kansas cases are relevant. In an early Kansas Supreme Court case, *State v. Beuerman*, 59 Kan. 586, 53 P. 874 (1898), during argument, the presiding judge of a jury trial left the bench, went into an adjoining room, closed the door behind him, and remained there for about 10 minutes. The Supreme Court admonished that a judge cannot relinquish control of the trial:

> "[T]here can be no court without a judge, and he cannot even temporarily relinquish control of the court or the conduct of the trial. It is necessary that he should hear all that transpires in the trial in order that he may intelligently review the proceedings upon the motion for a new trial. It is especially important that he should be visibly present every moment of the actual progress of a criminal trial where the highest penalty of the law may be imposed. The defendant is entitled to be tried in a court duly constituted, and if the presiding judge abandons the trial or relinquishes control over the proceedings the accused has good cause to complain. [Citations omitted.] The fact that the court may not see or hear everything occurring in the court-room, or that he may step into an adjoining room, but not out of hearing of the proceedings, is not necessarily prejudicial to the interests of the defendant in every case; but the presiding judge cannot safely absent himself from the trial or relinquish control over the proceedings during the trial." 59 Kan. at 592.

We must point out that the *Beuerman* court did not determine whether the absence of the trial judge constituted reversible error because of other errors in the case. 59 Kan. at 592.

In a later civil case, the presiding judge of a jury trial called the clerk to preside over arguments, saying he had other matters to attend to. Our Supreme Court stated "it ought not to require very much of a showing of prejudice to authorize a new trial" and reversed the judgment. See *Fiechter v. Fiechter*, 97 Kan. 166, 167, 155 P. 42 (1916).

In another civil case, a party moved for a new trial alleging the trial judge fell asleep during the trial. In ruling on the motion, the judge said he did not recall dozing off. The Supreme Court found that the record did not support the party's allegations, despite an affidavit from one of the jurors indicating the judge appeared to be asleep at one point. The court held the mere *possibility* of prejudice was insufficient to overturn the verdict. *Ettus v. Orkin Exterminating Co., Inc.*, 233 Kan. 555, 565, 665 P.2d 730 (1983).

Even if the civil cases require some showing of prejudice before reversing when a judge is absent or asleep during a trial, we must point out that those cases did not consider the question of structural error. In *Orkin*, the court found that the record did not support the party's factual contention that the judge had fallen asleep during the trial. 233 Kan. at 565. In other words, there remained a question of whether the judge, in fact, fell asleep. Here, there is no question.

Johnson contends that a sleeping judge is an absent judge. Indeed, a sleeping judge does not and cannot preside over a trial. Many courts have considered whether a judge's absence from the courtroom during some stage of the trial constitutes structural error.

The Tenth Circuit Court of Appeals recently considered whether an absent judge constituted structural error, but the case is not very helpful. In *United States v. Solon*, 596 F.3d 1206, 1212 (10th Cir. 2010), the district judge left the bench for almost 6 minutes during defense counsel's closing argument. The judge told the parties to "go right ahead," but nothing occurred during his absence. 596 F.3d at 1209. Defense counsel waited for the judge's return. The court concluded that under these facts, the absence of the judge

was not structural error. The court did not decide whether a judge's absence and "'complete abdication of judicial control over the process'" would constitute structural error. 596 F.3d at 1212 n.1. Practically speaking, in *Solon*, the trial was suspended during the judge's absence because everything stopped when the judge left the bench.

Some courts have found structural error when a judge has been absent from the courtroom. The Illinois Supreme Court held it was per se reversible error when a judge left the bench during cross-examination of a witness. See *People v. Vargas*, 174 Ill. 2d 355, 673 N.E.2d 1037 (1996). The judge was unable to rule on objections, except by having a question read back upon the judge's return.

> "A defendant's liberty, as well as the State's interest in convicting the guilty, are at stake in every criminal trial. A presiding judge's supervision over every stage of the proceedings precludes speculation that jurors may perceive evidence received in the judge's absence as less significant, and impresses upon jurors the importance of the interests of the State and the defendant. A rule that a trial judge's absence from the proceedings is harmless would open the door to abuses which could hinder those interests and undermine public confidence in judicial proceedings." 174 Ill. 2d at 371-72.

A Florida appellate court held it was unworkable to require a showing of prejudice when a trial judge was absent during part of the trial. The court further held a prejudice requirement would not sufficiently deter judges from such behavior. *Peri v. State*, 426 So. 2d 1021, 1027 (Fla. Dist. App. 1983).

Johnson relies on a Third Circuit opinion. The Third Circuit held it was structural error for a judge to be absent at a critical stage of a criminal trial, on the facts of the case at hand. *United States v. Mortimer*, 161 F.3d 240, 241-42 (3d Cir. 1998). In *Mortimer*, the presiding judge disappeared without notice during defense counsel's summation. The prosecutor attempted to make an objection, but instead exclaimed, "The judge is not here." 161 F.3d at 241. No reason was given for the judge's disappearance. The judge was

9

back on the bench in time to thank defense counsel for her summation and call on the prosecutor. The Third Circuit stated:

> "A trial consists of a contest between litigants before a judge. When a judge is absent at a 'critical stage' the forum is destroyed. *Gomez v. United States*, 490 U.S. 858, 873, 109 S. Ct. 2237, 104 L. Ed. 2d 923 (1989). There is no trial. The structure has been removed. There is no way of repairing it. The framework 'within which the trial proceeds' has been eliminated. See *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). The verdict is a nullity. *Gomez*, 490 U.S. at 876, 109 S. Ct. 2237 (1989)." 161 F.3d at 241.

Here, it is unknown how long or during which precise portion of the trial the judge slept. A juror did notice the judge sleeping and asked the bailiff if Johnson could have a fair trial. And a juror sought to bring the matter up during jury deliberations. The judge admitted on the record that he "did nod off some." For whatever portion of the trial the judge slept, the judge was not presiding over this trial.

Such facts make it difficult to assess prejudice if we do not rule this to be structural error. How long is it permissible for a judge to sleep before it becomes prejudicial? Fifteen minutes? Half an hour? During summations? This issue defies harmless error analysis which means it must be structural error.

According to the record, it was the first afternoon of the trial when the judge fell asleep. The jury had just been seated, the opening statements were made, and the prosecutor's key witness took the stand. These are all critical stages of the trial. A fully awake judge was needed to preside over these proceedings. The judge was later called upon to rule on the defense's motion for judgment of acquittal. At least one of the jurors noticed the judge was sleeping. The fact that the judge was sleeping permeated this trial. One of the jurors sought to bring it up during jury deliberations. The argument for structural error is compelling.

10

As the Kansas Supreme Court said in 1898, there can be no court without a judge. How can the public have confidence in the outcome of a trial if the trial judge is napping? This is not an error in the presentation of evidence, nor is it an error in the instruction of the jury, nor is it like other trial issues where we examine them to see if they are harmless. This error affected the framework of the entire trial. Our citizens expect a fully awake trial judge presiding over a criminal trial. This was structural error.

*We turn to two issues raised by Johnson that may arise on remand—waiver of a jury trial and failure to instruct the jury on one count of misdemeanor discharge of a firearm.*

Johnson contends that the district court was required to obtain a jury trial waiver before accepting his stipulation that he had a prior adjudication that prevented him from possessing a firearm. We hold the rule set out in *White v. State*, 222 Kan. 709, 713-14, 568 P.2d 112 (1977), controls this issue and rule that Johnson is not entitled to relief on this point.

The State charged Johnson with criminal possession of a firearm by a convicted felon. Johnson signed a stipulation that stated he had a prior juvenile adjudication that prohibited him from owning and possessing a firearm. After jury selection, the court informed the parties that it planned to read the stipulation during preliminary instructions to the jury. Both defense counsel and the prosecutor agreed. The court read the stipulation during the preliminary instructions. The written stipulation was later provided to the jurors during their deliberations.

We find no error on this point. In *White*, 222 Kan. at 713-14, the Supreme Court stated:

> "We know of no case or statute holding that a trial court must interrogate and advise a defendant, who is represented by counsel, before accepting and approving stipulations as to the evidence, and we are not prepared to initiate such a requirement.

11

The stipulation in this case was in writing. It was prepared and was signed by the defendant and his attorney prior to its presentation to the trial court. It was read aloud to the defendant in the presence of his attorney . . . . If petitioner had any objection to that stipulation, the time for complaint was then, not now.

"We note that even now, petitioner is not contending that he misunderstood the stipulation, or that he had insufficient time to discuss it with counsel, or that he was unaware of its effect, or that he entered into it other than freely, understandingly and voluntarily. He does not contend that he was uninformed, overreached, coerced, defrauded, or victimized in any way."

*White* is still good law. See *State v. Rizo*, 304 Kan. 974, 982-83, 377 P.3d 974 (2016).

After *White*, our Supreme Court outlined a specific procedure for courts to follow when a defendant stipulated to a prior conviction for purposes of a criminal possession of a firearm charge. See *State v. Lee*, 266 Kan. 804, 815-16, 977 P.2d 263 (1999). Lee was concerned with the admissibility of evidence. The defendant claimed that because he offered to stipulate to his prior felony conviction, it was error for the district court to admit evidence of that conviction. The *Lee* holding was explicitly limited to "criminal possession of a firearm status cases in which the issue as to what constitutes admissible evidence when defendant has stipulated to having committed a prior felony was asserted in the trial court and remains an issue on appeal." 266 Kan. at 804, Syl. ¶ 5.

Here, there is no issue of what constitutes admissible evidence. And *Lee* does not say that failure to have the defendant personally acknowledge a stipulation violates the defendant's right to a jury trial. Rather, *White* suggests that the court does not violate such right when it accepts a stipulation without first advising the defendant. 222 Kan. at 713. Therefore, Johnson's right to a jury trial was not violated.

12

As was the case in *White*, Johnson does not contend that he

> "misunderstood the stipulation, or that he had insufficient time to discuss it with counsel, or that he was unaware of its effect, or that he entered into it other than freely, understandingly and voluntarily. He does not contend that he was uninformed, overreached, coerced, defrauded, or victimized in any way." See 222 Kan. at 713-14.

Johnson is entitled to no relief on this matter.

*The court erred by not giving a jury instruction on misdemeanor criminal discharge of a firearm.*

Johnson contends the district court erred by refusing to instruct the jury on misdemeanor criminal discharge of a firearm—a purported lesser included offense of felony criminal discharge of a firearm.

Johnson's trial counsel requested the court to instruct the jury on misdemeanor criminal discharge of a firearm. The State objected. The district court refused to instruct the jury on the misdemeanor offense because it was factually inappropriate.

> "[I]f the jury finds that Mr. Johnson is the person that fired the shot in the circumstances that were present, the car following these two boys that ended up at Mr. Johnson's house, Mr. Johnson going out of the house with a gun in hand, firing a shot is not the type of act that I think is contemplated by that misdemeanor statute and I will not give that instruction."

When the failure to give a lesser included offense instruction is challenged on appeal, appellate courts (1) determine whether the appellate court has jurisdiction to consider the issue and whether it was properly preserved; (2) determine the merits of the claim; and (3) determine whether the error was harmless. *State v. Dupree*, 304 Kan. 377,

13

391-92, 373 P.3d 811 (2016). Johnson's claim was preserved. He requested the instruction, and the district court denied the request.

Whether a crime is a lesser included offense of another—*i.e.*, whether the instruction is legally appropriate—is a question of law over which an appellate court has unlimited review. *State v. Charles*, 304 Kan. 158, 165, 372 P.3d 1109 (2016). A lesser included crime is:

"(1) A lesser degree of the same crime, except that there are no lesser degrees of murder in the first degree under subsection (a)(2) of K.S.A. 2013 Supp. 21-5402, and amendments thereto;
"(2) a crime where all elements of the lesser crime are identical to some of the elements of the crime charged;
"(3) an attempt to commit the crime charged; or
"(4) an attempt to commit a crime defined under paragraph (1) or (2)." K.S.A. 2013 Supp. 21-5109(b).

Johnson was charged with criminal discharge of a firearm in violation of K.S.A. 2013 Supp. 21-6308(a)(1)(B). That statute provided:

"(a) Criminal discharge of a firearm is the:
(1)     Reckless and unauthorized discharge of any firearm:
. . . .
(B) at a motor vehicle . . . in which there is a human being whether the person discharging the firearm knows or has reason to know that there is a human being present.
. . . .
(3)     discharge of any firearm:
. . . .
(B) upon or from any public road, public road right-of-way or railroad right-of-way except as otherwise authorized by law." K.S.A. 2013 Supp. 21-6308.

14

K.S.A. 2013 Supp. 21-6308(a)(1)(B) is a severity level 7 person felony; K.S.A. 2013 Supp. 21-6308(a)(3)(B) is a class C misdemeanor. K.S.A. 2013 Supp. 21-6308(b). Both parties agree that misdemeanor criminal discharge of a firearm is a lesser degree of the charged crime. See *State v. Ramirez*, 299 Kan. 224, 230-33, 328 P.3d 1075 (2014); *State v. Jefferson*, 297 Kan. 1151, 1170, 310 P.3d 331 (2013). The instruction was legally appropriate. See K.S.A. 2013 Supp. 21-5109(b)(1).

Even when a lesser included offense instruction would have been legally appropriate, failure to instruct on the lesser included crime is erroneous only if the instruction would have been factually appropriate under K.S.A. 2013 Supp. 22-3414(3). See *State v. Molina*, 299 Kan. 651, 661, 325 P.3d 1142 (2014). Lesser included offense instructions must be given if "there is some evidence which would reasonably justify a conviction of some lesser included crime" as defined in K.S.A. 2013 Supp. 21-5109(b). K.S.A. 2013 Supp. 22-3414(3). When evaluating whether a lesser included instruction is factually appropriate in the individual case, the standard of review is "[i]f, after a review of all the evidence viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty of the lesser crime, failure to give the instruction is error." *State v. Fisher*, 304 Kan. 242, 258, 373 P.3d 781 (2016). But see *Charles*, 304 Kan. at 165 (considering State's request, after close of evidence, for an expansive lesser included offense instruction).

Here, a rational factfinder could have found Johnson guilty of the lesser offense—discharge of a firearm upon or from a public road. K.S.A. 2013 Supp. 21-6308(a)(3)(B). Randall Gifford, the victim, testified he was in his vehicle, backing up on Cessna Street. He saw a man walk out into Cessna Street near the intersection, pull out a gun, and fire a shot. Police found a bullet shell casing on Cessna Street near the intersection of Cessna and Roseberry. The district court erred by refusing to instruct the error on misdemeanor criminal discharge of a firearm.

15

The error is reversible only if the court determines there is a reasonable probability that the error affected the outcome of the trial in light of the entire record. *State v. Plummer*, 295 Kan. 156, 168, 283 P.3d 202 (2012).

Here, the jury could have reasonably questioned whether Johnson fired "at a motor vehicle" as required by K.S.A. 2013 Supp. 21-6308(a)(1)(B)—the charged crime. Gifford told the 911 dispatcher that: "He fired it towards me but I think he was pointing more up in the air . . . but it was still towards me . . . he wasn't pointing directly up." Gifford told one police officer that the shooter "intentionally fired over his head." At trial, Gifford testified that the man pointed the gun at his car. Gifford's car was not hit by a bullet. Sergeant Bart Brunscheen testified that he overheard Johnson say that "he did shoot the gun, but . . . he wasn't shooting it at anybody." Therefore, the district court's failure to give the misdemeanor instruction was reversible error. Assuming the State pursues the same charges, in any future trial, the misdemeanor alternative must be given.

Reversed and remanded for a new trial.

\* \* \*

BUSER, J., dissenting: While I share my colleagues' view that judges should be attentive during judicial proceedings, I dissent from the majority opinion for four reasons. First, the majority's holding that a judge who nods off during a criminal jury trial necessarily commits structural error is without precedent in Kansas statutory law or caselaw. Indeed, precedent from analogous cases in Kansas and other jurisdictions generally requires a showing of prejudice before a verdict may be overturned due to a sleeping judge. Second, my independent review of the trial proceedings convinces me that Daquantrius S. Johnson was not prejudiced as a result of inattentiveness by the trial judge. Moreover, if there was any prejudice, it was removed or mitigated by the trial judge's handling of the matter. Third, K.S.A. 22-3423, which establishes a procedure for

16

declaring mistrials (which defense counsel specifically waived in this case), would have afforded Johnson ample protection if the trial judge's inattentiveness had resulted in prejudice that denied Johnson his constitutional right to a jury trial. Finally, defense counsel's refusal of the trial judge's invitation to move for a mistrial under the circumstances was invited error.

For all of these reasons, I would find no reversible error on the part of the trial judge and affirm Johnson's convictions.

## FACTUAL SUMMARY

The jury trial began on October 27, 2014. In the morning, the trial judge and prosecutor conducted voir dire of prospective jurors. After the lunch recess, the afternoon session began at 1:30 p.m. with the prosecutor continuing his voir dire, followed by defense counsel's voir dire. Both the prosecutor and defense counsel passed the jury venire for cause. Of note, during the afternoon voir dire there were no objections made by either counsel and, as a result, no rulings were sought by counsel or made by the trial court.

After the jury venire was passed for cause, the trial judge spoke with those individuals who were not selected for questioning and directed them to the jury assembly room. The trial judge then presided over the parties' peremptory challenges. At the conclusion of this process, the trial judge seated the jurors and recessed the trial at 3:15 p.m. for 15 minutes. During this recess, the trial judge had an extended discussion with both counsel regarding the preliminary instructions he intended to give the jurors upon their return to the courtroom. Additionally, the trial judge and defense counsel discussed an evidentiary stipulation.

17

Upon the jurors' return from the recess, they were sworn and the trial judge provided them with lengthy preliminary jury instructions which comprised 14 pages of the trial transcript. Both counsel presented brief opening statements. There were no objections raised during these presentations and no rulings by the trial judge. The State's first witness, Randall Gifford, was the complaining witness in the case. During direct examination, the State offered several exhibits into evidence and on each occasion the trial judge ruled on their admissibility. During cross-examination, the prosecutor raised only one relevance objection to defense counsel's question which was promptly sustained by the trial judge. At the conclusion of Gifford's testimony the trial judge recessed the proceedings for the day.

The next morning, the following proceedings took place in the courtroom:

"THE COURT:  Good morning.

"THE JURY:  Good morning.

"THE COURT:  Ladies and gentlemen, I believe we're ready to get underway on this matter. Before we do that, though, there's something that I want to bring out and discuss, and that is earlier this morning one of the jury members pulled Christine aside and made the observation that during the course of the proceeding in the trial yesterday afternoon I may have been sleeping or nodding off, and the question was raised whether or not Mr. Johnson then could have a fair trial. Christine, I think, explained to the juror that raised that issue that you are the trier of facts and at the conclusion of the case you are the ones that decide all the factual issues and reach a determination as to whether or not Mr. Johnson is guilty or not guilty and whether or not the case has been proven, and that is a correct assessment of the matter.

"As I mentioned to you yesterday in my very preliminary instructions, the role of the judge and the jury are different. You are the trier of facts. I decide what evidence you will hear and what instructions you will receive. I don't believe during the course of this trial yesterday afternoon there were any objections raised that I had to make rulings on that would have been affected by my nodding off. I acknowledge myself, ladies and gentlemen, that I did nod off some. I doubt that I'm the first judge in America that's ever done that.

18

"And I want to also just observe the fact that I think I mentioned to you actually I graduated from law school in December of 1971, almost 43 years ago. I've probably been involved in as many as 300 jury trials, and over the course of my career I've learned and have gained a great deal of respect for our jury system. I recognize fully that many people—as I indicated in our informal discussions yesterday morning, many people when they get a jury summons the first reaction is, golly, why do I have to do this, and yet at the same time in my 43 years of experience most jurors I find are very conscientious about their role and their responsibility. They take their job seriously. And, quite honestly, I'm glad that this matter was brought out in the open so that it can be dealt with.

"In that regard, the defendant, of course, is the one who's affected and is the one who is entitled to have a fair trial. Obviously the State is entitled to have a fair trial also. It is a constitutional right for the defendant to be given a fair trial. So the question is whether or not the defendant now wants to make motion for a mistrial based on this conduct. So, Mr. Beall, is it your wish to request a mistrial?

"MR. BEALL:  Not at this time. We're ready to proceed.

"THE COURT:  Very well. With that then we'll proceed on. Mr. Roush, you may call your next witness.

"MS. HART:  Your Honor, the State calls Kayla Wilson.

"THE COURT:  And I'll try to do better."

It is against this factual background that the first question is presented:  Was the trial judge's nodding off during the afternoon session a structural error that defies analysis by harmless-error standards because it affected the framework within which the trial proceeds? See *State v. Jones*, 290 Kan. 373, Syl. ¶ 7, 228 P.3d 394 (2010).

STRUCTURAL ERROR

In holding that "[i]t is structural error for a trial judge to sleep during a criminal trial," my colleagues do not cite any on-point Kansas precedent to support their novel proposition. Slip op. at 1. Indeed, my colleagues' legal contention is a brand new statement of Kansas law. Additionally, the majority opinion does not cite any on-point

19

precedent from other jurisdictions that have adopted the structural error model when a trial judge falls asleep during a criminal trial.

In contrast, my review of federal and other state jurisdictions provides examples where courts have specifically addressed the judicial somnolence issue and required some showing of prejudice prior to overturning a conviction in a criminal case. See *United States v. White*, 589 F.2d 1283 (5th Cir. 1979) (Defense was not impermissibly prejudiced when trial judge fell asleep during defense counsel's opening statement.); *Lampitok v. State*, 817 N.E.2d 630, 640-41 (Ind. App. 2004) (No prejudice when trial judge slept during defense counsel's closing argument and, as a result, did not rule on prosecutor's objection.); *United States v. Martinez*, 97 Fed. Appx. 869, 872 (10th Cir. 2004) (unpublished opinion) (Defense was not disparaged when trial judge fell asleep during defense counsel's cross-examination of coconspirator who testified as prosecution witness.); *United States v. Barrios*, No. 97-1364, 2000 WL 419940, at *2 (2d Cir. 2000) (unpublished opinion) (If trial judge had fallen asleep, that fact would not have been a basis for reversal absent prejudice.); *United States v. Yanez-Baldenegro*, No, 93-10538, 1994 WL 441757, at *3 (9th Cir. 1994) (unpublished opinion) (Defendant did not substantiate his claim of negative impact on the jury when trial judge fell asleep during defense counsel's closing argument and "did not raise an objection at the point when any prejudice could have been cured."); *Robinson v. Com.*, No. 2003-CA-002424-MR, 2006 WL 891059, at *4 (Ky. App. 2006) (unpublished opinion) (No objections made or rulings sought while trial judge was sleeping and snoring during cross-examination of a witness.). In short, the majority's structural error model contrasts with numerous other jurisdictions that generally require a showing of prejudice in order to reverse a defendant's conviction under circumstances where a trial judge falls asleep during a criminal trial.

The majority's new holding pertaining to criminal jury trials also contrasts with Kansas precedent which provides that in *civil* jury trials judicial somnolence is not a

20

question of structural error, but requires a showing of prejudice before a verdict may be overturned. This established Kansas precedent should control in this criminal case.

The majority cites two Kansas civil cases, *Ettus v. Orkin Exterminating Co., Inc.*, 233 Kan. 555, 565, 665 P.2d 730 (1983), and *Fiechter v. Fiechter*, 97 Kan. 166, 155 P. 42 (1916), and candidly concedes that both cases "require some showing of prejudice before reversing when a judge is absent or asleep." Slip op. at 8. *Ettus*, which relates to a sleeping judge, is especially probative:

> "In its other claim of misconduct by the court, Orkin alleges the trial judge fell asleep and thereby lost control of the trial. Orkin argues this is grounds for a new trial. . . . In *Fiechter* we said *only a slight showing of prejudice would be necessary* to authorize a reversal. In the instant case the record made during trial does not support the allegations although an affidavit from one of the jurors indicates she thought the judge appeared, in at least one instance, to be asleep. In ruling on the point in Orkin's motion for new trial, the judge said he did not recall dozing off at anytime during the long trial. The court also pointed out that at no time during the trial did counsel claim the court was inattentive or bring any such claim to its attention. When the court did miss the tenor of an objection, it had the reporter's read-back available to it. Assuming there was a credible showing of misconduct by the court, *no prejudice has been shown and the mere possibility of prejudice is not sufficient to overturn a verdict*." (Emphasis added.) 233 Kan. at 565.

*Ettus* is instructive because it demonstrates how Kansas precedent has addressed the serious matter of judicial somnolence to insure the fundamental rights of civil litigants.

Given the close parallels between *Ettus* and the present case, I believe we should follow this precedent rather than embark on a new structural error model to address trial judges who may be inattentive during criminal trials. Similar to the present case, in *Ettus*, a juror noticed the trial judge nodding off but counsel never asserted the judge was

21

inattentive or raised the issue during trial, and the requisite prejudice was not shown. Accordingly, our Supreme Court held no reversal of the verdict was necessary. See *Ettus*, 233 Kan. at 571. And if reversal of the verdict was not justified in *Ettus*, then given the additional facts of the present case, a reversal of Johnson's convictions is surely unwarranted here.

Unlike *Ettus*, Johnson's defense counsel not only waived his right to move for a mistrial, he waited to raise the somnolence issue for the first time on appeal. Additionally, unlike *Ettus*, in this case the trial judge *sua sponte* raised the issue during trial and advised the jury that he believed the matter was important to Johnson because the defendant had a constitutional right to a fair trial. In this way, unlike *Ettus*, the trial judge's admonition removed or mitigated any potential prejudice the trial judge's inattentiveness may have caused Johnson. See *State v. Harris*, 297 Kan. 1076, Syl. ¶ 5, 306 P.3d 282 (2013). *Ettus* provides valuable precedent that prejudice to a litigant should be shown prior to the reversal of a jury's verdict because of claimed judicial inattentiveness.

Lastly, Kansas law also requires a showing of prejudice in the analogous case of a sleeping juror. See *State v. Kirby*, 272 Kan. 1170, 1196, 39 P.3d 1 (2002) ("A trial court abuses its discretion when it denies a motion for a new trial based on juror misconduct if the defendant can show that [1] an act of the jury constituted misconduct and [2] the misconduct substantially prejudiced the defendant's right to a fair trial."). Moreover, because a judge who sleeps during trial implicates the issue of judicial misconduct, it is noteworthy that in judicial misconduct cases proof of prejudice is also required. See *State v. Hayden*, 281 Kan. 112, Syl. ¶ 1, 130 P.3d 24 (2006) ("In order to warrant a new trial, it must affirmatively appear that the conduct prejudiced the substantial rights of the complaining party."); *State v. Miller*, 274 Kan. 113, Syl. ¶ 3, 49 P.3d 458 (2002) ("The party alleging judicial misconduct bears the burden of showing his or her substantial rights were prejudiced.").

In summary, Kansas law has not adopted the structural error standard in cases of a judge sleeping during a civil jury trial, a juror sleeping during a criminal jury trial, or a judge engaging in misconduct during a criminal trial. Given these analogous circumstances where some showing of prejudice is required prior to overturning a jury's verdict, I believe it is unnecessary and unwise to establish a separate structural error standard for judges who may be inattentive during a criminal jury trial.

PREJUDICE ANALYSIS

My colleagues argue that the circumstances of this case "make it difficult to assess prejudice if we do not rule this to be structural error." Slip op. at 10. I disagree. The lack of prejudice was clearly discernable in *Ettus*. In the present case, the lack of prejudice is also readily ascertainable and apparent.

As detailed in the factual background, it is evident that the trial proceedings in the afternoon were unremarkable and conducted in accordance with Kansas criminal procedure. During the afternoon session, the trial judge supervised the voir dire (K.S.A. 22-3408[3]); was present to rule on any challenges for cause (K.S.A. 22-3410[1]); oversaw the parties' peremptory challenges (K.S.A. 2016 Supp. 22-3412); engaged in an in camera discussion with counsel about legal matters; administered the oath to the jurors to try the case (K.S.A. 2016 Supp. 22-3412[a][2][I], [b]); gave the jurors lengthy and detailed instructions on the law and, in particular, advised them about the elements of the crimes for which Johnson was charged (K.S.A. 2016 Supp. 22-3414[3]); and oversaw the parties' opening statements and witness testimony (K.S.A. 2016 Supp. 22-3414[1]). While the trial judge was engaged in these judicial duties there were no objections, complaints, or mention by either counsel about inattentiveness, improper rulings, or irregular proceedings.

The majority's suggestion that the trial's structure or framework was adversely affected in this case is belied by reading the transcript of the afternoon session. My independent review persuades me that the regular order of trial as mandated by Kansas criminal procedure was followed, and the trial judge was sufficiently attentive that no error or irregularity is apparent in counsel's voir dire, the parties' passing the jury for cause, the handling of the parties' peremptory challenges, the administration of the oath to jurors, the trial judge's lengthy and detailed preliminary jury instructions, the parties' opening statements, and testimony by the State's complaining witness. If there had been any abnormalities in the trial judge's handling of the trial that potentially prejudiced Johnson's constitutional rights, the record is bereft of any evidence of it. In all respects, the trial judge's handling of the trial proceedings complied with Kansas law and procedure.

I acknowledge that the record on appeal does not contain additional facts which would have been helpful in the determination of whether—and if so, to what extent—the trial judge was inattentive and whether Johnson was prejudiced as a result. But who is responsible for the lack of a trial court ruling and the absence of a complete record? The answer is obvious.

Defense counsel's decision to waive any objection at trial to the claimed inattentiveness and to refuse the trial judge's invitation to pursue the matter by making a motion for mistrial was consequential. As a result, defense counsel failed to offer any evidence, make a proffer, present legal argument, or obtain a ruling regarding whether a fundamental failure of the proceedings had prejudiced Johnson's constitutional rights. Defense counsel's waiver short-circuited the fact finding which could have provided additional information by which the trial judge and our appellate court could have evaluated whether an error occurred and whether Johnson was prejudiced as a result.

24

K.S.A. 22-3423

Kansas law provides an excellent mechanism for determining if a trial judge has erred by nodding off during trial and evaluating if the error is reversible or harmless. K.S.A. 22-3423 affords a criminal defendant or litigant a prompt and effective procedure for addressing and remedying trial errors which adversely affect an individual's constitutional rights. In relevant part, the statute provides:

> "The trial court may terminate the trial and order a mistrial at any time that he finds termination is necessary because:
> "(a) It is physically impossible to proceed with trial in conformity with law; or
> "(b) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law and the defendant requests or consents to the declaration of a mistrial; or
> "(c) Prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution." K.S.A. 22-3423(1).

Over the years, K.S.A. 22-3423 has been a particularly well-suited procedure to evaluate and rectify potentially serious trial irregularities in criminal cases. See *State v. Leaper*, 291 Kan. 89, 95-106, 238 P.3d 266 (2010) (Kansas Supreme Court found trial judge erred in failing to investigate claim that juror saw defense witness remove item of evidence from courtroom, but held it was harmless error.); see also *State v. Hayes*, 270 Kan. 535, 540, 17 P.3d 317 (2001) (Kansas Supreme Court found a violation of defendant's constitutional rights to a fair and impartial jury because the trial judge denied a mistrial upon discovery that a hearing-impaired juror had not heard any of defendant's testimony.).

In the context of K.S.A. 22-3423(1)(c), which seems especially applicable to the facts and circumstances of this case, our Supreme Court has articulated the appropriate analysis a trial judge should employ in assessing whether a mistrial should be declared:

> "K.S.A. 22-3423(1)(c) permits a trial court to declare a mistrial if there was prejudicial conduct inside or outside the courtroom that makes it impossible to proceed without injustice to a defendant or the prosecution. To follow the statute, a trial court must engage in a two-step analysis. It must (a) decide whether there was some fundamental failure of the proceeding, and (b) if so, determine whether it is possible to continue without an injustice. This second step requires assessing whether the damaging effect of any prejudicial conduct may be removed or mitigated through an admonition, jury instruction, or other action. If that is not possible because the degree of prejudice would result in an injustice, a mistrial is necessary." *Harris*, 297 Kan. 1076, Syl. ¶ 3.

In the case on appeal, defense counsel's oral motion to invoke the provisions of K.S.A. 22-3423(1)(c) would have afforded Johnson a quick and efficacious procedure to protect his fundamental constitutional rights. For example, the concerned juror could have been interviewed by the trial judge and counsel, out of the presence of other jurors, and asked on how many occasions and for what length of time he noticed the trial judge sleeping during any particular portion(s) of the afternoon session. Similarly, the prosecutor, defense counsel, bailiff, court deputy, or Johnson himself, given their presence in the courtroom, may have provided relevant information to either confirm or contradict the juror's observations and provide their own assessment of the trial judge's attentiveness. In short, had defense counsel simply availed his client of the protections afforded criminal defendants by K.S.A. 22-3423(1)(c), rather than waiving those protections, the trial judge and our court could have more fully analyzed whether Johnson's constitutional rights were violated.

Still, despite defense counsel's waiver of the motion for mistrial, the trial judge's *sua sponte* actions upon learning of the juror's concern were in conformance with the

26

two-step analysis provided in K.S.A. 22-3423(1)(c). See 297 Kan. 1076, Syl. ¶ 3. First, in the presence of the jury, the trial judge forthrightly acknowledged that he may have fallen asleep or nodded off sometime during the afternoon session. Second, the trial judge recognized that, as a result, at least one juror had expressed concern about whether Johnson could receive a fair trial. Third, *the trial judge explained that he did not believe his conduct affected the trial proceedings*. Fourth, the trial judge spoke approvingly of the jury system and his belief that jurors take their responsibility very seriously which, he implied, resulted in one juror speaking out. Fifth, *the trial judge underscored that the critical issue was whether Johnson's constitutional right to a fair trial was affected.* Sixth, in the presence of the jury, *the trial judge specifically offered defense counsel the opportunity to remedy any error by moving for a mistrial.* Finally, the trial judge pledged to "try to do better." Consistent with the prophylactic purpose of K.S.A. 22-3423, while the trial judge may have erred by being inattentive, he promptly and appropriately took steps to remove or mitigate any prejudice to Johnson.

## INVITED ERROR

Finally, since the trial judge's inattentiveness was not structural error, I would also affirm Johnson's convictions because, as acknowledged by my colleagues, a litigant generally may not invite error and then complain of the error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014); slip op. at 3-4.

In *Verser*, a State's witness admitted on cross-examination and redirect examination that he had lied while testifying during his direct examination. The State moved to strike the testimony and the defense sought a mistrial. Following a recess to allow defense counsel to consult with Verser, however, defense counsel withdrew his motion for mistrial. The State then sought a mistrial which prompted another recess. Upon the trial judge's return to the courtroom, he indicated that he was inclined to grant a mistrial if Verser wanted one. After a brief discussion with Verser, however, defense

27

counsel declined the offer, the trial judge denied the State's motion for mistrial, and the trial resumed with the defendant subsequently convicted of first-degree murder and criminal possession of a firearm.

For the first time on appeal, Verser argued that the fabricated testimony by the State's witness constituted a fundamental failure of the proceedings which necessitated the declaration of a mistrial. Similar to the present case, Verser claimed this irregularity violated his right to a fair trial and constituted structural error which precluded the State from arguing the invited error doctrine.

Our Supreme Court declined to find structural error, noting that few constitutional errors "qualify for the 'structural' label." 299 Kan. at 784. The court then analyzed whether the trial court's decision overruling the motion for mistrial was invited error:

> "Verser's decision to proceed did not result in an unavoidable miscarriage of justice; it enabled Verser and his counsel in their intentional effort to undermine the State's otherwise convincing case. We are doubtful that denial of the State's motion for mistrial was error at all. But if it was, it was not only invited; it was welcomed by the defense; and it is not reversible." 299 Kan. at 785.

During oral arguments in this case held at Wichita State University, both the prosecutor and appellate defender surmised that, under the circumstances, had Johnson moved for a mistrial the trial judge would have granted it. This raises the question: Why did defense counsel waive Johnson's right to seek a mistrial? Perhaps he believed that no error had in fact occurred. Then again, perhaps defense counsel strategized that by not seeking a mistrial, if his client was convicted, he could raise the inattentiveness issue as structural error for the first time on appeal and, without having to show any prejudice, obtain a reversal of Johnson's convictions. In short, defense counsel's strategy of simply refusing to make a motion for mistrial would provide an insurance policy that if Johnson

28

was convicted, he could obtain a reversal of those convictions on appeal without any showing of prejudice by claiming a structural error.

Since defense counsel did not disclose the reason for waiving Johnson's right to seek a mistrial, we are left to speculate regarding the precise nature of the defense's strategy. Still, on this record, I would find defense counsel's actions were strategic in that they effectively insured the jury trial would continue unabated with the trial court's inattentiveness an unresolved question of possible constitutional error left for appellate review. Under these circumstances, defense counsel's actions were invited error. As our court has stated:

> "The invited error rule effectively binds trial counsel to strategic decisions inducing judicial rulings with the purpose of obtaining favorable judgments for their clients. The rule also defeats a disreputable strategy aimed at requesting that a judge act in a particular way to salt the record with error as an end in itself, thereby providing potential grounds for reversal of an adverse judgment." *State v. Hargrove*, 48 Kan. App. 2d 522, Syl. ¶ 2, 293 P.3d 787 (2013).

CONCLUSION

It is understatement to observe that judges should remain attentive during judicial proceedings. The question this case presents is how should courts analyze those situations wherein the occasional judge may not be attentive? Current Kansas law embodied in K.S.A. 22-3423 provides a long-standing, prompt, and effective method of remedying judicial somnolence while protecting the fundamental constitutional rights of criminal defendants. A new structural error standard applied in these situations would be without precedent, unnecessary, and prone to abuse by defense counsel. For these reasons, I would affirm Johnson's convictions.

29