FILED
United States Court of Appeals
Tenth Circuit

**April 16, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMES WILLIAM BUZZARD,

Defendant - Appellant.

No. 25-5071
(D.C. No. 4:21-CR-00351-GKF-3)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **MURPHY**, and **MORITZ**, Circuit Judges.
_____

A jury convicted James Buzzard of first-degree murder in Indian Country and related crimes. The district court sentenced him to life in prison. Prior to his trial, the government had offered Buzzard a plea deal recommending a sentence between 63 to 78 months, but Buzzard rejected it. Eventually, the government revoked the plea deal. Buzzard's counsel grew concerned that he may have inadvertently failed to convey that the plea deal had a firm expiration date, and that failure might have violated Buzzard's Sixth Amendment right to effective counsel. He requested the

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and 10th Circuit Rule 32.1.

court hold a hearing on the issue, and, because of counsel's potential conflict, appoint separate counsel for the hearing.

The court agreed in part and held a limited-purpose hearing to determine the threshold issue of whether the plea deal had an expiration—but declined to appoint separate counsel for the hearing. After the hearing, the court concluded, among other things, that the plea deal had no firm expiration date but instead had been revoked after Buzzard rejected the offer and made a counteroffer the government rejected. Because there was no firm expiration date to communicate to Buzzard, the court declined to hold the requested hearing on ineffective assistance of counsel and denied Buzzard's motion to appoint substitute counsel for that hearing.

On appeal, Buzzard contends that (1) he had a due process right to be present at the hearing; (2) the court erred by not appointing separate counsel for that hearing; and (3) his counsel was constitutionally ineffective for failing to communicate the plea deal's expiration date.

We find these arguments unpersuasive. We **AFFIRM** the judgment of the district court and **DISMISS** Buzzard's ineffective assistance claim without prejudice.

## I.    Background

Buzzard and his two sons conspired to murder and murdered a man who had killed Buzzard's daughter. A federal grand jury charged Buzzard with a number of crimes, including first-degree murder in Indian Country. Prior to trial, in early 2023, the

government offered each defendant a plea deal. Buzzard's two sons took a deal, but Buzzard did not.

On March 30, 2023, the government offered Buzzard the same plea deal that one of his sons had accepted: plead guilty to one count of violating 18 U.S.C. § 924(o) (use of a firearm to commit a crime of violence) with a stipulated cross reference to voluntary manslaughter, and the other charges would be dropped. If Buzzard took the deal, his approximate guideline sentence would be 63–78 months.

Buzzard made several counteroffers to the March 30 plea offer. The government rejected each of them. It finally told Buzzard's counsel that the March 30 plea deal would expire on May 12. That day came, and Buzzard requested the government keep the plea deal open long enough to allow Buzzard and his counsel to discuss the government's forthcoming response to his motion to dismiss. The government agreed. The government responded to Buzzard's motion to dismiss in late May. On June 1, Buzzard again rejected the March 30 plea offer and proposed a counteroffer that the government rejected. On June 6, the district court held a hearing on Buzzard's motion to dismiss and denied the motion.

On June 20, with trial a month away, Buzzard's counsel again spoke with the government about a possible plea deal. Government counsel stated that the March 30 plea deal was no longer available and that she would send Buzzard a new plea offer. After that conversation, Buzzard's counsel texted the government counsel that he was headed to see Buzzard, and though it was "a long shot," he planned to see if Buzzard would sign the March 30 plea deal. R. Vol. I at 980. Buzzard signed the March 30 plea

deal, which Buzzard's counsel sent to government counsel. Government counsel responded that she was not authorized to accept the offer.

Aware of a potential misstep, Buzzard's counsel suggested during a pre-trial hearing in early July that he may have been constitutionally ineffective for failing to communicate the March 30 plea deal's expiration date. Soon after, Buzzard filed a motion requesting that the court appoint independent counsel to determine whether his trial counsel had been ineffective. In that motion he also requested a hearing about his counsel's potential Sixth Amendment violation under *Lafler v. Cooper*, 566 U.S. 156 (2012), and its companion case, *Missouri v. Frye*, 566 U.S. 134 (2012), for failing to communicate the expiration date of the March 30 plea deal. Buzzard did not request that he be present for the hearing.

The government opposed the motion in part. It agreed to a hearing to discuss the nature of the plea negotiations and did not oppose appointment of separate counsel for that hearing. But it opposed the motion to the extent that Buzzard sought a pre-trial determination of counsel's ineffectiveness because that claim was not yet ripe: *i.e.*, Buzzard might be acquitted or receive a lower sentence.

In response, the court set a limited pre-trial hearing to discuss "whether the March 30, 2023 plea offer to a § 924(o) charge expired on June 6, 2023 or any other date." R. Vol. I at 977. "Only if the court conclude[d] that the March 30 plea offer expired" would it consider the *Lafler*/*Frye* ineffective assistance claim. *Id.* at 978. Because

4

"[s]eparate, independent counsel for Mr. Buzzard [was] not necessary for [that] limited inquiry," the court declined to order independent counsel for the hearing. *Id.* at 977.

The court held the limited-purpose hearing on July 13. Buzzard was not present. The court found no evidence that the March 30 plea offer had an explicit, fixed expiration date following its May extension. Further, the court found that on June 20 the government explicitly revoked the March 30 plea deal. As a result, it concluded that *Frye* was inapplicable because that case concerned counsel's failure to communicate the explicit, fixed expiration date of a plea deal. Thus, it denied Buzzard's request to appoint independent counsel for a *Lafler/Frye* ineffective assistance inquiry.

A jury subsequently found Buzzard guilty of all charged counts. The district court sentenced him to life in prison on the first-degree murder conviction and to 120 months' imprisonment for each of the remaining counts.

## II.    Discussion

Buzzard raises three issues on appeal: (1) the district court violated his due process right to be present at the limited-purpose hearing; (2) the district court erred by denying his motion to appoint independent counsel; and (3) his trial counsel was constitutionally ineffective for failing to communicate the expiration of the March 30 plea deal.

### A.    Right-to-Presence Claim

Buzzard asserts that his due process right to presence was violated when he was not present at the limited-purpose hearing.

Because Buzzard did not raise this objection below, we review for plain error. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *United States v. Burbage,* 365 F.3d 1174, 1180 (10th Cir. 2004)). To establish that an alleged error is plain, the defendant must show the error is "'obvious' or 'clear' under current, well-settled law." *United States v. Hardy*, 149 F.4th 1153, 1159 (10th Cir. 2025) (quoting *United States v. Faunce*, 66 F.4th 1244, 1253 (10th Cir. 2023)). This "generally requires on-point precedent from the Supreme Court or the Tenth Circuit." *Id.*

A defendant has a due process right to be present at "critical" stages of criminal proceedings. *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). "[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Id*. This right attaches "whenever [defendant's] presence has a relation, reasonably substantial, to the fulness [sic] of his opportunity to defend against the charge." *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105–06 (1934)). It is a limited right that applies "to the extent that a fair and just hearing would be thwarted by [defendant's] absence, and to that extent only." *Id.* (quoting *Snyder*, 291 U.S. at 108). "Due process does not give a defendant a right to be present at a proceeding just so he can gather information for later use." *United States v. Beierle*, 810 F.3d 1193, 1199 (10th Cir. 2016). The

6

"privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow.'" *Stincer*, 482 U.S. at 745 (quoting *Snyder*, 291 U.S. at 106–07).

Buzzard contends that we should not review for plain error because his absence created a structural error that *per se* requires us to reverse. He relies on *Arizona v. Fulminante*, 499 U.S. 279 (1991) and *United States v. Cronic*, 466 U.S. 648 (1984) to argue that some trial errors require automatic reversal.

In *Fulminante*, the Supreme Court explained that when a trial error is a "structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself," the reviewing court must reverse. 499 U.S. at 310. Structural errors affect the "entire conduct of the trial from beginning to end": for example, total deprivation of counsel for a criminal defendant, partiality of a judge, or the unlawful exclusion of members of the defendant's race from a grand jury. *Id.* at 309–10 (collecting cases). The Court compared Fulminante's alleged error—a coerced confession—to those types of structural errors and concluded it was different in kind. Unlike those structural errors, the coerced confession involved error which occurred "in the context of other evidence presented" and therefore could be "quantitatively assessed" for harmless error. *Id.* at 308, 310.

In *Cronic*, the Court employed similar logic. It vacated the Sixth Circuit's reversal of a conviction because the Circuit improperly inferred a Sixth Amendment violation without evaluating whether counsel's actual performance prejudiced the defendant. 466 U.S. at 666. The Circuit had inferred that the defendant's

representation by a court-appointed lawyer who was young, had a real estate practice, and was appointed shortly before trial, was constitutionally ineffective and required reversal—without a showing of harm to the defendant. The Court disagreed. Unlike cases with a "complete denial of counsel" or an equivalent failure to "subject the prosecution's case to meaningful adversarial testing," in which the error compromises the entire framework of trial, the potential prejudice of the young lawyer's representation could be excised and quantified. *See id.* at 659. So, the Court remanded the potential error for a prejudice analysis.

Most constitutional trial errors, like those alleged in *Fulminante* and *Cronic*, do not fit into the narrow structural category; they undergo harmless error review, and when not preserved, plain error review. *See Fulminante*, 499 U.S. at 306–07 (collecting cases applying harmless error review). Such errors include unconstitutionally overbroad jury instructions, unconstitutional admissions of evidence, unconstitutional restrictions on the right to cross-examine a witness, and, as relevant here, violations of a defendant's right to presence at trial. *Id.* In *Rushen v. Spain*, 464 U.S. 114 (1983), the Supreme Court specifically noted that the violation of a defendant's right to presence is "subject to harmless error analysis . . . unless the deprivation, by its very nature, cannot be harmless." 464 U.S. at 117 n.2 (citation modified).

Like most allegations of trial error, Buzzard's alleged trial error is not structural. Buzzard's claimed error—lack of presence at a single, limited-purpose hearing—is not the kind of structural error that "by its very nature, cannot be

harmless" because we can quantify the impact of the alleged harm on the outcome of trial. *Id.* Rather, it is the kind susceptible to harmless error review. *See Fulminante*, 499 U.S at 306. And because Buzzard did not object below, we apply plain error review.[1]

Buzzard argues that his due process right to be present at "critical stages" was violated because he did not attend the "ineffective assistance of counsel hearing" on July 13. Aplt. Br. at 13. He contends his presence was necessary because he may have "needed to testify that he would have accepted the Mach [sic] 30th plea offer before it expired." *Id.* at 14. And finally, Buzzard argues he had a "right to know what was going on" regarding his attorney's "mistake." *Id.* at 14–15.

These arguments do not persuade us. The district court limited the hearing to whether Buzzard's March 30 plea offer had expired. R. Vol. I at 977 ("[D]uring the July 13 hearing, the court intends to take up only the limited issue of identification of the terms of the United States's plea offer to Mr. Buzzard—specifically, whether the March 30, 2023 plea offer to a § 924(o) charge expired on June 6, 2023 or any other date."). The court indicated it would hold a separate hearing on ineffective assistance

---

[1] Contrary to Buzzard's argument, he did have the opportunity to object below. Even assuming Buzzard's counsel was conflicted and motivated not to object, Buzzard maintained the ability to raise the issue. For example, Buzzard's counsel consulted him before filing the motion requesting this hearing, and that motion did not request Buzzard's presence. R. Vol. I at 848–51. Further, Buzzard gives no explanation for why he did not object in the district court after the hearing. To the extent that Buzzard argues his *counsel* should have objected and was thus constitutionally ineffective for subjecting his claim to plain error review, that issue is not ripe for this court to hear. *See infra* Section II(c).

"only if" it found that the plea deal had expired. *Id.* at 978. Buzzard does not show how a fair hearing would be "thwarted by his absence" because counsel knew the content of their plea discussions with each other. *Snyder*, 291 U.S. at 108.

Nor was Buzzard's willingness to testify about his openness to the March 30 plea deal relevant to the question of expiration. Due process does not guarantee a right to presence when such "presence would be useless." *Stincer*, 482 U.S. at 745. Neither did Buzzard's desire to be in the know warrant his presence. *See Beierle*, 810 F.3d at 1199.

The district court did not plainly err by failing to ensure Buzzard's presence at the limited-purpose hearing.

### B. Substitute Counsel Claim

Buzzard next argues that the district court erred in denying his motion to appoint substitute counsel to represent him at the limited-purpose hearing. He argues that substitute counsel was required under the Sixth Amendment and the Criminal Justice Act because his trial counsel had a conflict of interest.[2] We review a district court's denial of a motion to substitute counsel for abuse of discretion. *United States v. Lott*, 433 F.3d 718, 725 (10th Cir. 2006).

---

[2] The Criminal Justice Act requires that "[t]he United States magistrate judge or the court shall appoint separate counsel for persons having interests that cannot properly be represented by the same counsel, or when other good cause is shown." 18 U.S.C. § 3006A(b).

To justify substitute counsel, a "defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." *United States v. Porter*, 405 F.3d 1136, 1140 (10th Cir. 2005) (quoting *United States v. Padilla,* 819 F.2d 952, 955 (10th Cir. 1987)). "Good cause for substitution of counsel consists of more than a mere strategic disagreement between a defendant and his attorney." *Id.* (quoting *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002)).[3]

Buzzard asserts that the hearing presented an inherent conflict of interest for his counsel because it was about his counsel's ineffectiveness. Had the district court held a hearing on that issue, which Buzzard had requested, the conflict would be apparent. But that hearing never happened. Instead, the court held a hearing only for the purpose of determining whether the March 30 plea offer had a firm expiration date that should have been communicated to Buzzard. Thus, counsel had no conflict of interest, nor was there any other reason to appoint substitute counsel.

The district court did not abuse its discretion in denying Buzzard's motion for substitute counsel.

## C.　*Ineffective Assistance Claim*

Finally, Buzzard claims that his trial counsel was constitutionally ineffective.

---

[3] We apply this same "good cause" standard to challenges brought under the Sixth Amendment and the Criminal Justice Act. *Compare Lott*, 310 F.3d at 1249–50 (expressing this standard in the context of a Sixth Amendment ineffective assistance challenge), *with United States v. Clark*, 717 F.3d 790, 810 (10th Cir. 2013) (applying it to a challenge under the Criminal Justice Act).

11

Claims of ineffectiveness brought on direct appeal are "presumptively dismissible, and virtually all will be dismissed." *United States v. Flood*, 635 F.3d 1255, 1260 (10th Cir. 2011) (quoting *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc)).  The reason for this presumption is that in most cases, the record below is insufficient to permit full appellate review of constitutional ineffectiveness. *United States v. Hamilton*, 510 F.3d 1209, 1213 (10th Cir. 2007).  In *Flood*, this court explained:

> A factual record must be developed in and addressed by the district court in the first instance for effective review.  Even if evidence is not necessary, at the very least counsel accused of deficient performance can explain their reasoning and actions, and the district court can render its opinion on the merits of the claim.

635 F.3d at 1260 (quoting *Galloway,* 56 F.3d at 1240).

We consider ineffective assistance claims on direct appeal in limited circumstances: when (1) the issue was raised before and ruled on by the district court, *and* (2) an adequate factual record exists. *Id.*  Neither circumstance applies here.  While the court did make findings relevant to constitutional effectiveness under *Frye*, it did so only within its resolution of Buzzard's motion to appoint substitute counsel.  The court did not conclude one way or another whether Buzzard's trial counsel was constitutionally ineffective in plea negotiations.

Regardless, the record is not sufficiently developed for us to decide the claim on direct appeal. *Flood*, 635 F.3d at 1260.  The district court did not gather evidence to determine whether Buzzard's counsel was constitutionally ineffective in plea

12

negotiations. We do not know, for example, the nature and extent of conversations between counsel and Buzzard, why Buzzard rejected the government's plea offers, or what counsel's reasons were for proceeding and advising Buzzard in the manner that he did.

As a result, Buzzard's path to challenge counsel's performance is a petition for habeas relief within the time limit established by 28 U.S.C. § 2255(f).

## III.   Conclusion

We affirm the district court and dismiss Buzzard's ineffective assistance of counsel claim.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge